[No. B225885. Second Dist., Div. Seven. Nov. 30, 2011.]

RONALD STRONG, Plaintiff and Respondent, v.
THE STATE OF CALIFORNIA etc., Defendant and Appellant.

COUNSEL

Kamala D. Harris, Attorney General, Alberto L. Gonzalez, Acting Assistant Attorney General, Richard J. Rojo and D.L. Helfat, Deputy Attorneys General, for Defendant and Appellant.

Neustadt & Berriz and Armando J. Berriz for Plaintiff and Respondent.

OPINION

JACKSON, J.—

## INTRODUCTION

Defendant the State of California (the State), acting by and through the Department of the California Highway Patrol (CHP), appeals from a judgment entered in favor of plaintiff Ronald Strong (Strong) following a court trial. The court determined that CHP Officer Christopher Swanberg negligently lost or destroyed the identifying information of the individual involved in an accident during which Strong was injured and that the governmental immunity afforded by Government Code section 821.6[1] did not insulate the State from liability for the officer's negligence.

On appeal, the State seeks reversal of the judgment on the grounds, among others, that Officer Swanberg did not owe Strong a duty of due care, that California law bars tort-based causes of action for spoliation of evidence, and that the immunity conferred by section 821.6 applies in this case. We reverse the judgment with directions.

## FACTS[2]

Around 7:00 p.m. on May 15, 2006, 43-year-old Strong was riding a motorcycle on Encinal Canyon Road in Malibu when the unidentified driver of a second vehicle entered the roadway unsafely, causing a collision with Strong. Strong's friend, Jack Ribis (Ribis), who was riding his motorcycle some distance behind Strong, arrived at the site of the accident and helped get plaintiff and his motorcycle off the roadway. Strong, Ribis and the driver of the second vehicle waited for emergency personnel to arrive.

---

[1] All further statutory references are to the Government Code unless otherwise stated.

[2] We derive the facts from the parties' "Stipulated Facts for Bench Trial" and additional testimonial and documentary evidence adduced at trial.

In his traffic incident report, Officer Swanberg reported that he received a call regarding the accident at 7:20 p.m. and arrived at the scene at 7:59 p.m. According to Strong, he spoke with Officer Swanberg at the scene and asked him for the identity of the driver in the second vehicle.[3] The officer did not convey the requested information at that time but assured Strong it would be in the accident report. In reliance on the officer's assurance, Strong did not secure that information at the scene.

At trial, Officer Swanberg testified that when he arrived at the scene, Strong already had been taken to the hospital. Ambulance company records, however, documented the ambulance's arrival at 8:04 p.m. Emergency medical personnel found Strong lying supine on the roadway. He had "road rash" on his back and reported pain in his back, left leg and ankle. Strong was admitted to the emergency room of Los Robles Regional Medical Center at approximately 8:30 p.m.

Officer Swanberg also testified that when he arrived on the scene at 7:59 p.m., a Los Angeles County Sheriff's deputy was present. The deputy, who appeared to be "perturbed" by Officer Swanberg's response time, gave the CHP officer a small piece of paper with Strong's name on it and stated Strong had been taken to the hospital in an ambulance. After talking to Ribis and the second driver and assessing the damage to Strong's motorcycle, Officer Swanberg drove to the hospital where he claimed to have made his first contact with Strong. Officer Swanberg did not know the identity of the deputy sheriff who had been at the scene and made no effort to find the deputy at a later date.

At the scene of the accident, Ribis overheard a CHP officer ask Strong for identification and insurance information. Ribis also overheard Strong ask the officer if he got the necessary information from the other party, to which the CHP officer said, " 'Don't worry. It will be in the police report. You'll get it at the hospital.' " The same CHP officer who talked to Strong interviewed Ribis. At trial, Ribis identified Officer Swanberg as the officer he overheard talking to Strong.

In his traffic incident report, Officer Swanberg identified Strong as the party at fault. The identity of the driver of the second vehicle was not included in the report. During the course and scope of investigating the accident and preparing his report, Officer Swanberg apparently lost or

---

[3] Strong repeated this request at the hospital.

destroyed the individual's address, telephone number and personal information. Officer Swanberg's and the CHP's subsequent efforts to locate the second driver were unsuccessful.[4]

The CHP conducted an internal investigation, after which it concluded that Officer Swanberg improperly lost the identity of the second driver and then wrote a traffic incident report in which he erroneously faulted Strong for the accident. The CHP charged Officer Swanberg with neglect of duty and with conducting an improper investigation. It issued him a memorandum of decision, advising him that he had violated CHP policy or procedure and directing him to refrain from such violation in the future. The memorandum also warned the officer that the CHP could take disciplinary action if his misconduct recurred. The CHP compelled Officer Swanberg to amend his traffic incident report. Officer Swanberg complied, filing a supplemental narrative admitting his error and concluding based upon the physical evidence and statements obtained that the unidentified driver was the primary cause of the accident.

Strong sustained a left ankle and talus fracture, as well as back pain, in the accident. He required considerable medical care, including surgery, and chronic pain management. He had no medical insurance and was unable to work. Without the second driver's identifying information, Strong was unable to seek legal recourse for his damages from that driver. Whether the second driver was insured or had assets sufficient to satisfy an adverse judgment was unknown.

## PROCEDURAL BACKGROUND

On June 14, 2007, Strong filed a complaint for personal injuries and damages against the State, the CHP and Officer Swanberg. On October 10, the trial court sustained defendants' demurrer to the complaint with leave to amend.

On October 19, 2007, Strong filed a first amended complaint for personal injuries and damages against defendants, alleging causes of action for negligence under section 815.6 (first cause of action), negligence based on a special relationship (second cause of action), intentional infliction of emotional distress (third cause of action), negligent infliction of emotional distress (fourth cause of action), violation of article I, section 7 of the California Constitution (fifth cause of action), violation of article I, section 16 of the California Constitution (sixth cause of action), violation of Civil Code section 52.1 (seventh cause of action), and respondeat superior liability pursuant to section 815.2 (eighth cause of action).

---

[4] All that could be remembered was the name "Kjos."

On December 14, 2007, defendants demurred to this amended pleading. On January 18, 2008, Strong filed a request for dismissal, asking the court to dismiss with prejudice the third, fourth and fifth causes of action and to dismiss Officer Swanberg from the first cause of action. The request was granted that same day.

On March 10, 2008, the trial court held a hearing on the demurrer as to the remaining first, second, sixth, seventh and eighth causes of action. After entertaining counsel's arguments, the court took the matter under submission. On March 13, the court overruled the demurrer. Defendants thereafter filed their answer to plaintiff's first amended complaint, alleging as affirmative defenses, among other things, the investigation immunity conferred by section 821.6 and the rule prohibiting causes of action for loss or destruction of evidence.

On September 25, 2009, the parties stipulated and agreed to waive trial by jury and to have the case tried by the court in whole or in part on stipulated facts. The parties further stipulated that Officer Swanberg be dismissed from the action with prejudice, leaving the State, acting by and through the CHP, as the only defendant. In addition, the parties agreed that with the exception of the negligence causes of action—i.e., the first and second causes of action—all other causes of action would be dismissed with prejudice. Finally, it was stipulated, for purposes of this action and any verdict rendered, that Officer Swanberg was acting within the course and scope of his employment under section 815.2, subdivision (a).

On October 6, 2009, the parties filed their "Stipulated Facts for Bench Trial." At the commencement of trial, the State filed a motion for judgment pursuant to Code of Civil Procedure section 631.8, as well as a request for a statement of decision. Trial commenced on October 9 with the stipulated facts being supplemented by the live testimony of Officer Swanberg, Ribis and Strong.

On March 12, 2010, the trial court issued a proposed statement of decision, to which the State and Strong objected. On April 14, the trial court overruled all objections and issued its statement of decision.

Therein, the trial court stated in no uncertain terms that it did not believe Officer Swanberg's recollection of the events. Specifically, the court noted that the officer had "filed an erroneous police report finding plaintiff to be at fault for the accident likely because he realized that he had lost the second driver's information: If he found the plaintiff at fault then his negligence might seem less odious to his department." The court further observed that Officer Swanberg "appears to have manufactured the presence of an LASD

Deputy as the first responder to deflect blame from him. If such a deputy had responded, and potentially had the second driver's information, it would have been an easy task for Swanberg to find that Deputy through normal law enforcement channels. The fact that Swanberg made no effort whatsoever to obtain the identity of that Deputy supports the conclusion that no such Deputy exists." Finally, the court found that Officer Swanberg's assertion that he arrived on the scene after Strong had been transported to the hospital to be contradicted by his report, in which he stated he arrived on the scene at 7:59 p.m., and ambulance company records documenting the ambulance's arrival at 8:04 p.m.

Concluding that Strong's and Ribis's versions of the events were correct, the court found that Officer Swanberg spoke to Strong at the scene and promised that the identifying information of the second driver would be in his report. Given that Strong "was splayed on the canyon road after being hit off his motorcycle" the court found it "understandable that both plaintiff and Ribis would be preoccupied with clearing the road to avoid another accident and making plaintiff as comfortable as possible without causing further injury." Thus, the court concluded "it was reasonable for the plaintiff to rely on that promise and for him to find no need to secure the information himself." The court noted that "[h]aving been lulled into this false sense of security, and knowing that he did not have medical insurance, his reliance on the officer's promise clearly inured to his detriment . . . ." In finding for Strong on his cause of action for negligence based upon a special relationship, the court concluded that a "special relationship" was formed between Officer Swanberg and Strong, such that Strong's own failure to obtain the information himself was not negligence. The court found that based upon this special relationship, Officer Swanberg owed Strong a duty to obtain and preserve the second driver's identifying information, that the officer breached his duty causing Strong to be injured. The court found no comparative negligence on Strong's part.

The trial court also found in favor of Strong on his cause of action for breach of a mandatory duty. Specifically, the court found that the CHP "Collision Investigation Manual" and "CHP Form 555," the "Traffic Collision Report" form, imposed upon Officer Swanberg a mandatory duty within the meaning of section 815.6 to properly investigate a traffic collision, that the officer breached this duty causing Strong to be injured.

Turning to the defenses asserted by the State, the trial court rejected the State's argument that California law barring tort-based causes of action for spoliation of evidence precluded Strong's recovery. Despite acknowledging the existence of such cases, the trial court concluded, in reliance on *Clemente v. State of California* (1985) 40 Cal.3d 202 [219 Cal.Rptr. 445,

707 P.2d 818] (*Clemente II*), that the special relationship between Officer Swanberg and Strong was a distinguishing factor, allowing recovery in this case.

The trial court also rejected the State's immunity defense. Specifically, the court concluded that the immunity afforded by section 821.6 did not immunize Officer Swanberg from liability because he lost the evidence during the course and scope of his investigation. In the trial court's view, *Clemente II* compelled the conclusion that section 821.6 was inapplicable. The court noted, however, that but for the holding in *Clemente II*, it would have ruled otherwise.

The trial court found that Strong had sustained total damages of $220,499.77. The court apportioned 50 percent of fault to the CHP and 50 percent to the driver of the second vehicle. It further reduced the damages by five percent as a result of Strong's lack of mitigation efforts. The total award to Strong was $99,224.90.

Judgment in favor of Strong was entered on May 17, 2010. This appeal by the State followed.

## DISCUSSION

### A. *Overview of Governmental Tort Liability*

██ A public entity, such as the State, is liable for injuries caused by its employees acting within the scope of employment. No liability will attach, however, if the employee's acts or omissions do not give rise to a cause of action against the employee or if the employee is immune from liability. (§§ 811.2, 815.2.) As such, a public entity's liability hinges on the liability of its employee. (*Walker v. County of Los Angeles* (1987) 192 Cal.App.3d 1393, 1397 [238 Cal.Rptr. 146].)

A public entity is not liable for any injury caused by the act or omission of the public entity or a public employee unless such liability is imposed by statute (§ 815, subd. (a)), and liability imposed upon a public entity by statute is subject to statutory immunity and any defenses that could be asserted by a private individual (§ 815, subd. (b).)[5] (*Richardson-Tunnell v. Schools Ins. Program for Employees (SIPE)* (2007) 157 Cal.App.4th 1056, 1061 [69 Cal.Rptr.3d 176].)

---

[5] Section 815 provides: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. [¶] (b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."

A public entity is liable for injury proximately caused by an act or omission of an employee within the scope of employment if the act or omission gives rise to a cause of action against the public employee. (§ 815.2, subd. (a).) If a public employee of a public entity is immune from liability, so too is the public entity unless otherwise provided by statute. (§ 815.2, subd. (b)[6]; *Richardson-Tunnell v. Schools Ins. Program for Employees (SIPE)*, *supra*, 157 Cal.App.4th at p. 1061.)

Generally speaking, a public employee is liable for injuries resulting from his or her conduct to the extent that a private individual is liable. (§ 820, subd. (a).) Such liability is subject to defenses that may be asserted by a private person. (§ 820, subd. (b).)[7]

These statutes "establish two principles: (1) unless they are granted specific statutory immunity, a public entity and its employees are liable in tort for the same causes of action that could be brought against a private person; and (2) absent a statute specifically imposing liability, a public entity and its employees are not liable for causes of action in tort that could not be pursued against a private party." (*Lueter v. State of California* (2002) 94 Cal.App.4th 1285, 1300 [115 Cal.Rptr.2d 68].)

## B. *Duty of Due Care*

In order to establish negligence, a plaintiff must demonstrate a duty on the part of defendant, breach of that duty, causation and damages. (*Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 876 [104 Cal.Rptr.3d 352].) At issue here is the issue of duty, which "is a question of law for the court, to be reviewed de novo on appeal." (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770–771 [122 Cal.Rptr.3d 313, 248 P.3d 1170]; see *Catsouras, supra,* at p. 876.)

As previously noted, the trial court determined that Officer Swanberg owed Strong a duty of due care on two independent bases. It determined that Officer Swanberg had a duty of due care based upon the formation of a

---

[6] Section 815.2 provides: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. [¶] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

[7] Section 820 states: "(a) Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person. [¶] (b) The liability of a public employee established by this part (commencing with Section 814) is subject to any defenses that would be available to the public employee if he were a private person."

special relationship and a mandatory duty of due care pursuant to section 815.6. We discuss mandatory duty first.

### 1. *Mandatory Duty*

 Section 815.6 provides that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Whether an enactment creates an actionable mandatory duty within the meaning of section 815.6 is a question of law. (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 499 [93 Cal.Rptr.2d 327, 993 P.2d 983]; *Department of Corporations v. Superior Court* (2007) 153 Cal.App.4th 916, 926 [63 Cal.Rptr.3d 624].)

The parties stipulated that CHP Form 555, the Traffic Collision Report, "requires that the investigating police officers identify all parties by Name, Address, Telephone, Date of Birth, Driver's License Number, etc. Obtaining this identifying information from parties is not discretionary—it is mandatory to obtain and record party identification when a CHP Officer investigates a traffic collision." The parties further stipulated that the CHP Collision Investigation Manual (investigation manual) requires "the investigating police officer [to] identify all parties by Name, Address, Telephone, Date of Birth, Driver's License Number, etc., so that it is possible to locate involved parties at a later date." Based upon these stipulated facts, the trial court found that the investigation manual and CHP Form 555 were enacted by the Legislature or adopted pursuant to California's Administrative Procedure Act (§ 11340 et seq.) and thus created a mandatory duty pursuant to section 815.6.

The State challenges this determination, aptly noting that the record is devoid of any *evidence* establishing that either the investigation manual or CHP Form 555 was the product of a law passed by the Legislature or adopted pursuant to the Administrative Procedure Act. Strong, however, relies upon *Clemente II, supra,* 40 Cal.3d 202 to support his assertion that they have the force of law as a statute, ordinance or regulation of a public entity. Strong's reliance on *Clemente II* is misplaced.

In *Clemente II,* the trial court instructed the jury that if it found that the CHP officer violated any provisions in the CHP investigation manual and that the violation was a legal cause of the plaintiff's injuries it was to find the violation to be negligence. The state high court rejected a challenge to this instruction, relying on its decision in *Peterson v. City of Long Beach* (1979) 24 Cal.3d 238 [155 Cal.Rptr. 360, 594 P.2d 477]. It observed: "In *Peterson* this

court held that the presumption of negligence found in Evidence Code section 669 applies to a police department manual. Evidence Code section 669 provides in relevant part: '(a) The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted. . . . [¶] In *Peterson* we concluded that the police department regulations regarding use of deadly force were regulations within the meaning of the broad provisions of Government Code section 811.6 because the manual was promulgated by the city manager and the police chief acting as heads of a public entity, the provision in question contained words of command as well as detailed requirements, and the regulations had the force of law. [Citation.]" (*Clemente II, supra*, 40 Cal.3d at pp. 214–215, fns. omitted.)

The Supreme Court in *Clemente II* observed that "[w]hile the language of the manual leaves much to the discretion of the officer in determining what steps to take, it also identifies the steps to be considered and the concerns which should motivate the officer in exercising his discretion. Obviously, an officer who fails to exercise the discretion vested in him—simply ignoring some of the steps to be taken without considering them—would be subject to disciplinary action, and we are satisfied that the regulations are not merely permissive." (*Clemente II, supra*, 40 Cal.3d at pp. 215–216, fns. omitted.)

Most fundamentally, *Clemente II* did not resolve the question of whether the CHP investigation manual had the force of law or had been adopted in accordance with the Administrative Procedure Act, however. That particular contention was made for the first time on appeal in a petition for rehearing. The court deemed the contention untimely. (*Clemente II, supra*, 40 Cal.3d at p. 216, fn. 6; *Posey v. State of California* (1986) 180 Cal.App.3d 836, 851 [225 Cal.Rptr. 830].)

Moreover, *Clemente II* was decided in 1985. In 1987, the Legislature added section 669.1 to the Evidence Code. It states: "A rule, policy, manual, or guideline of state or local government setting forth standards of conduct or guidelines for its employees in the conduct of their public employment shall not be considered a statute, ordinance, or regulation of that public entity within the meaning of Section 669, unless the rule, manual, policy, or guideline has been formally adopted as a statute, as an ordinance of a local governmental entity in this state empowered to adopt ordinances, or as a regulation by an agency of the state pursuant to the Administrative Procedure

Act (Chapter 3.5 (commencing with Section 11340) of Division 3 of Title 2 of the Government Code), or by an agency of the United States government pursuant to the federal Administrative Procedure Act (Chapter 5 (commencing with Section 5001) of Title 5 of the United States Code). This section affects only the presumption set forth in Section 669, and is not otherwise intended to affect the admissibility or inadmissibility of the rule, policy, manual, or guideline under other provisions of law."

Also in 1987, the Legislature amended section 811.6 to specify that " 'Regulation' means a rule, regulation, order or standard, having the force of law, adopted by an employee or agency of the United States pursuant to the federal Administrative Procedure Act . . . or as a regulation by an agency of the state pursuant to the Administrative Procedure Act . . . ."[8]

In the absence of *evidence* in the record establishing that either the investigation manual or CHP Form 555 was the product of a law passed by the Legislature or adopted pursuant to the Administrative Procedure Act, the trial court's determination to the contrary cannot stand. (*Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 720 [110 Cal.Rptr.2d 528, 28 P.3d 249] [CHP officer safety manual not formally adopted pursuant to the state or federal Administrative Procedure Act]; *Minch v. Department of California Highway Patrol* (2006) 140 Cal.App.4th 895, 908 [44 Cal.Rptr.3d 846] ["The CHP officer safety manual was not adopted pursuant to the Administrative Procedure Act, does not have the force of law, and does not establish a duty in tort on the part of CHP officers."]; *Posey v. State of California, supra*, 180 Cal.App.3d at pp. 847–849 [internal CHP guideline is not an enactment under § 815.6].) "Absent such adoption, Evidence Code section 669.1 forbids the use of the manual to establish the presumption of negligence that otherwise would arise under Evidence Code section 669." (*Lugtu, supra*, at p. 720.)

## 2. *Special Relationship*

The State contends that the verdict for Strong on his cause of action for negligence based upon a special relationship must be reversed. The State maintains that no special relationship was formed between Officer Swanberg and Strong and, as such, the officer did not owe Strong a duty to collect and retain the second driver's identifying information.

The trial court rejected Officer Swanberg's version of the events and credited Strong's and Ribis's versions. We will not disturb this credibility

---

[8] Prior to its 1987 amendment, section 811.6 defined "regulation" as "a rule, regulation, order or standard, having the force of law, adopted by an employee or agency of the United States or of a public entity pursuant to authority vested by constitution, statute, charter or ordinance in such employee or agency to implement, interpret, or make specific the law enforced or administered by the employee or agency."

determination. (*People v. Loker* (2008) 44 Cal.4th 691, 749 [80 Cal.Rptr.3d 630, 188 P.3d 580].) Accordingly, in resolving the issues on appeal, we presume that Officer Swanberg arrived on the scene before emergency medical personnel transported Strong to the hospital, spoke to Strong and, in response to Strong's request for the identity of the second driver, assured Strong that the information would be included in his accident report.

■ "A 'special relationship' exists if and only if an injured person demonstrates the public officer 'assumed a duty toward [him] greater than the duty owed to another member of the public.' (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 206 [185 Cal.Rptr. 252, 649 P.2d 894].)" (*Walker v. County of Los Angeles, supra*, 192 Cal.App.3d at pp. 1398–1399.) A special relationship has been found to arise when a public employee expressly or impliedly promises to undertake a special duty on a plaintiff's behalf (*Hartzler v. City of San Jose* (1975) 46 Cal.App.3d 6 [120 Cal.Rptr. 5]) or when a public employee causes an injured and dependent person to rely on the public employee to his detriment (*Mann v. State of California* (1977) 70 Cal.App.3d 773, 780 [139 Cal.Rptr. 82]). (*Walker, supra*, at p. 1399.)

In *Clemente v. State of California* (1980) 101 Cal.App.3d 374 [161 Cal.Rptr. 799] (*Clemente I*), disapproved in part in *Williams v. State of California* (1983) 34 Cal.3d 18, 28, footnote 9 [192 Cal.Rptr. 233, 664 P.2d 137], Clemente was struck by a motorcycle while crossing a Los Angeles city street and was seriously injured. CHP Officer Loxsom came upon the scene of the accident and saw Clemente crawling in the crosswalk in an attempt to reach safety. Officer Loxsom also observed a man pushing a motorcycle and directed him to place the motorcycle on the curb. (*Clemente I, supra*, at p. 376.)

After clearing the accident site of traffic, Officer Loxsom talked to the witnesses who were present. The unidentified driver of a van informed Officer Loxsom that he had stopped his van to permit Clemente to cross the street. The driver of a motorcycle did not, however, and hit Clemente. The driver of the motorcycle told the officer that he had not seen the victim and confirmed that he had struck him with his motorcycle. (*Clemente I, supra*, 101 Cal.App.3d at p. 376.)

Officer Loxsom called for an ambulance and asked his dispatch to contact the Los Angeles Police Department (LAPD) and ask it to send out a traffic unit at once. Officer Loxsom left the scene before the LAPD arrived and without ascertaining the identity of the motorcyclist, who also left the scene before the LAPD arrived. (*Clemente I, supra*, 101 Cal.App.3d at p. 377.) Without the identity of the motorcycle driver, Clemente, whose injuries left him in a semicomatose and incompetent condition, was unable to sue the motorcyclist for damages. (*Ibid.*)

Clemente sued the State and Officer Loxsom for negligence. The trial court dismissed Clemente's third amended complaint after sustaining the defendants' demurrer without leave to amend. (*Clemente I, supra,* 101 Cal.App.3d at p. 376.) The trial court concluded that the State and the CHP officer were immune from liability since the officer's negligence in failing to ascertain the motorcycle driver's identity before leaving the scene "merely constituted a failure to enforce a statute, presumably Vehicle Code section 20003." (*Clemente I, supra,* at p. 377, fn. omitted.)[9]

After citing section 818.2, which immunizes a public entity for injuries caused by "failing to enforce any law," and section 821, which immunizes a public employee for injuries caused by "failure to enforce an enactment" (see *Clemente I, supra,* 101 Cal.App.3d at p. 377), the court in *Clemente I* noted that the trial court's "conclusion is premised on the assumption that an investigation of a traffic accident by a highway patrol officer, pursuant to Vehicle Code section 2412, constitutes law enforcement within the meaning of the Governmental Tort Liability Act." (*Clemente I, supra,* at p. 377, fn. omitted.)[10] The court concluded it was not. (101 Cal.App.3d at p. 378.) It explained that "[b]roadly speaking, of course, an investigation by a highway patrol officer of a traffic accident, resulting in injury or death, to determine whether any violation of law contributed to the happening of the accident, is a law enforcement activity. It is a necessary preliminary step to the subsequent actual enforcement of the law that is found to have been violated. But to enforce a law normally means to compel obedience to the law by actual force, such as involuntary detention, arrest or punishment. [Citations.] An investigation, without a detention of significant duration, is a noncoercive activity and therefore is not, in our view, itself law enforcement." (*Ibid.,* fn. omitted.)

In the *Clemente I* court's view, Officer Loxsom's decision to exercise his discretion to stop at the accident scene was not at issue. What was at issue was "his negligence in his conduct of the discretionary investigation" which he undertook. The court concluded that neither the discretionary immunity conferred by section 820.2 nor the immunity for failure to enforce a law or

---

[9] Vehicle Code section 20003, subdivision (a) states that "[t]he driver of any vehicle involved in an accident resulting in injury to or death of any person shall also give his or her name, current residence address, the names and current residence addresses of any occupant of the driver's vehicle injured in the accident, the registration number of the vehicle he or she is driving, and the name and current residence address of the owner to the person struck or the driver or occupants of any vehicle collided with, and shall give the information to any traffic or police officer at the scene of the accident. . . ."

[10] Vehicle Code section 2412 provides that "[a]ll members of the California Highway Patrol may investigate accidents resulting in personal injuries or death and gather evidence for the purpose of prosecuting the person or persons guilty of any violation of the law contributing to the happening of such accident."

enactment conferred by sections 818.2 and 821 immunized the State and Officer Loxsom from the consequences of the officer's negligence. (*Clemente I, supra*, 101 Cal.App.3d at p. 379.) The court concluded that "the completely disabled and apparently incompetent plaintiff was . . . completely dependent on Officer Loxsom following the traffic accident" resulting in the formation of a special relationship between the officer and Clemente. (*Id.* at p. 380.) It reversed the judgment of dismissal and remanded for further proceedings. (*Ibid.*)

In *Williams v. State of California, supra*, 34 Cal.3d 18, the issue was "whether the mere fact that a highway patrolman comes to the aid of an injured or stranded motorist creates an affirmative duty to secure information or preserve evidence for civil litigation between the motorist and third parties." The court concluded that "stopping to aid a motorist does not, in itself, create a special relationship which would give rise to such a duty." (*Id.* at p. 21.)

While riding as a passenger in a car, a piece of a heated brakedrum from a passing truck was propelled through the windshield and hit Williams in the face before coming to rest in the car's backseat. In her complaint against the State and numerous Doe defendants, Williams alleged that defendants " 'arrived within minutes of the accident and assumed the responsibility of investigating the accident, and the accident of two other vehicles which were damaged and stopped at the scene to determine causes thereof, and said defendants so negligently and carelessly investigated the accident as to virtually destroy any opportunity on plaintiff's part to obtain compensation for the severe injuries and damages she suffered from any other defendants or any other persons who concurred in causing them. Included amongst said acts of negligence was the failure to investigate the brake drum part to determine it was still hot, failure to identify other witnesses at the scene or even the other motorists damaged by brake drums, and failure to attempt any investigation or pursuit of the owner or operator of the truck whose brake drum broke and cause plaintiff's injuries.' " (*Williams v. State of California, supra*, 34 Cal.3d at pp. 21–22, fn. omitted.)

The State moved for judgment on the pleadings, asserting that it had immunity from liability under sections 818.2, 821, 845, 846 and for discretionary acts pursuant to sections 820.2 and 820.25. The trial court granted the State's motion, finding it immune under sections 820.2 and 820.25. The trial court refused to apply "the 'special relationship exception' to statutory immunity." (*Williams v. State of California, supra*, 34 Cal.3d at p. 22, fn. omitted.)

Noting that "the immunity cart has been placed before the duty horse," the Supreme Court observed: " 'Conceptually, the question of the

applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity. . . .' " (*Williams v. State of California, supra*, 34 Cal.3d at p. 22.) Turning to the question of duty, the *Williams* court concluded that the plaintiff had failed to allege facts sufficient to establish a duty of due care owed by the State. It observed that "[t]he officers did not create the peril in which plaintiff found herself; they took no affirmative action which contributed to, increased, or changed the risk which would have otherwise existed; there is no indication that they voluntarily assumed any responsibility to protect plaintiff's prospects for recovery by civil litigation; and there are no allegations of the requisite factors to [support] a finding of special relationship, namely detrimental reliance by the plaintiff on the officers' conduct, statements made by them which induced a false sense of security and thereby worsened her position." (*Id.* at pp. 27–28, fn. omitted.) The court nevertheless concluded that the plaintiff should be given an opportunity to amend her complaint. (*Id.* at p. 28.) Finally, the *Williams* court disapproved *Clemente I, supra*, 40 Cal.3d 202, to the extent it was inconsistent with the views stated in *Williams*. (*Williams*, at p. 28, fn. 9.)

Before *Williams* was decided, the parties in *Clemente I* went to trial. The evidence at trial revealed that CHP Officer Loxsom was en route to freeway patrol when a passing motorist hailed him down and directed him to the scene of the accident in which Clemente had been hit by a motorcycle. Officer Loxsom called for an ambulance and spoke to witnesses, including the motorcycle driver who hit Clemente and the driver of a van who witnessed the collision. Officer Loxsom did not talk to Clemente to see if he was injured seriously. Officer Loxsom called LAPD and told the motorcycle driver not to leave and to wait for the LAPD. The officer then left the scene before the ambulance or LAPD arrived and without obtaining the name or license of the motorcyclist, the license plate number of the motorcycle or the personal information of the van driver who witnessed the accident. By the time the LAPD arrived, both the motorcyclist and van driver had left the scene. They were never located. (*Clemente II, supra*, 40 Cal.3d at pp. 209–210.) The accident left Clemente with severe brain damage and paralysis, making him dependent upon others for his daily care. (*Id.* at p. 210.) At trial, Clemente prevailed and obtained a judgment in excess of $2 million. (*Id.* at p. 209.) *Clemente II* is the appeal from that judgment.

█ Citing *Williams*, the defendants argued that *Clemente I* had been improperly decided and that Officer Loxsom did not owe Clemente a duty of due care in conducting an investigation of the accident. The Supreme Court concluded that its decision in *Clemente I* "is law of the case, establishing Loxsom's duty to exercise due care." (*Clemente II, supra*, 40 Cal.3d at p. 210.) While noting that the doctrine of law of the case would "not be adhered to where its application will result in an unjust decision" and that

"[t]he principal ground for making an exception to the doctrine of law of the case is an intervening or contemporaneous change in the law" (*id.* at p. 212), the court concluded that application of the doctrine would not result in an unjust decision (*id.* at p. 213). The state high court noted that "the parties went to trial prior to *Williams* and presented evidence with the understanding that the officer's liability would be governed by the standard set forth in *Clemente I*. Secondly, *Clemente I* did not misapply prior law in a way which resulted in 'substantial injustice.' Although *Williams* served to clarify what the duties of a highway patrol officer were under a given set of circumstances, our opinion in that case recognized the possibility that such an officer might owe a member of the public a duty of care based on conduct like that shown here." (*Clemente II, supra,* 40 Cal.3d at p. 213.)

In reliance on *Clemente II*, Strong contends that a special relationship was formed in this case. While we conclude that a special relationship was formed in this case, we reach this conclusion not because of *Clemente II*, but because the particular facts of this case warrant it.

 When a CHP officer conducts an accident investigation, the intended beneficiary of that investigation is the prosecuting agency charged with the responsibility of instituting criminal cases, not private parties contemplating civil action. (*Catsouras v. Department of California Highway Patrol, supra,* 181 Cal.App.4th at p. 879, citing *Williams v. State of California, supra,* 34 Cal.3d at p. 24, fn. 4.) Here, however, Strong expressly asked Officer Swanberg for the identity of the driver who pulled out in front of his motorcycle, and the officer, in turn, agreed to provide that information to Strong in the traffic collision report. Strong, who was on the ground injured, relied to his detriment on the officer's representation and made no efforts to obtain the desired information independently.

Inasmuch as Strong demonstrated that Officer Swanberg " 'assumed a duty toward [him] greater than the duty owed to another member of the public' " (*Davidson v. City of Westminster, supra,* 32 Cal.3d at p. 206) and promised to undertake a special duty on Strong's behalf (*Walker v. County of Los Angeles, supra,* 192 Cal.App.3d at p. 1399), we conclude that a special relationship was formed between Strong and Officer Swanberg. As a result, Officer Swanberg owed Strong a duty of due care to collect, retain and communicate the requested information.

 Duty, however, " 'is only a threshold issue, beyond which remain the immunity barriers.' " (*Davidson v. City of Westminster, supra,* 32 Cal.3d at p. 202, quoting *Whitcombe v. County of Yolo* (1977) 73 Cal.App.3d 698, 706 [141 Cal.Rptr. 189].) Stated otherwise, "immunity hurdles are not overcome by the existence of a special relationship . . . ." (*Davidson, supra,* at p. 202.) That hurdle will be discussed below.

## C. *Spoliation of Evidence*

Spoliation occurs when evidence is destroyed or significantly altered or when there is a failure to preserve property for another's use as evidence in current or future litigation. (*Hernandez v. Garcetti* (1998) 68 Cal.App.4th 675, 680 [80 Cal.Rptr.2d 443].) First party spoliation occurs when the spoliator is a party to the lawsuit. Third party spoliation occurs when the spoliator is not a party to the action. (*Lueter v. State of California, supra,* 94 Cal.App.4th at p. 1293.)

In *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1 [74 Cal.Rptr.2d 248, 954 P.2d 511], a first-party intentional spoliation case, the California Supreme Court held "that there is no tort remedy for the intentional spoliation of evidence by a party to the cause of action to which the spoliated evidence is relevant, in cases in which . . . the spoliation victim knows or should have known of the alleged spoliation before the trial or other decision on the merits of the underlying action." (*Id.* at pp. 17–18, fn. omitted.) The following year, in *Temple Community Hospital v. Superior Court* (1999) 20 Cal.4th 464 [84 Cal.Rptr.2d 852, 976 P.2d 223], the Supreme Court held that "no tort cause of action will lie for intentional third party spoliation of evidence." (*Id.* at p. 466.)[11]

Although the state's high court has not had the occasion to rule on the viability of the tort of negligent spoliation of evidence, appellate courts have concluded, in reliance on *Cedars-Sinai Medical Center v. Superior Court, supra,* 18 Cal.4th 1 and *Temple Community Hospital v. Superior Court, supra,* 20 Cal.4th 464, that the tort of negligent spoliation, whether of the first party or third party variety, is no longer viable. (*Lueter v. State of California, supra,* 94 Cal.App.4th at pp. 1289, 1293–1301; *Coprich v. Superior Court* (2000) 80 Cal.App.4th 1081, 1083, 1088–1090 [95 Cal.Rptr.2d 884]; *Farmers Ins. Exchange v. Superior Court* (2000) 79 Cal.App.4th 1400, 1401–1402, 1407 [95 Cal.Rptr.2d 51].) We agree with the reasoning of these cases and note, as did the court in *Coprich, supra,* at page 1089, that "it would be

---

[11] Justice Joyce L. Kennard, who authored the majority opinion in *Cedars-Sinai Medical Center v. Superior Court, supra,* 18 Cal.4th 1, dissented in *Temple Community Hospital v. Superior Court, supra,* 20 Cal.4th 464. Justice Kennard stated she "would recognize a narrowly crafted tort remedy for intentional third party spoliation of evidence, limited to cases in which the spoliator destroys the evidence with the intent of harming the spoliation victim's ability to bring or defend against a legal claim." (*Temple Community Hospital,* at p. 489 (dis. opn. of Kennard, J.).) Justices Stanley Mosk and Kathryn M. Werdegar concurred in Justice Kennard's dissent.

anomalous to impose liability for negligence with respect to conduct that would not give rise to liability if committed intentionally."[12]

*Lueter v. State of California, supra,* 94 Cal.App.4th 1285 is instructive. A motorist who was injured when an oil tanker blew a tire and crashed successfully sued the driver and owner of the tanker. The driver and the owner wanted to use part of its tire tread as evidence. A piece of tire tread had been taken from the scene of the accident by the employees of the CHP that investigated the accident. The tire tread was later discarded. A jury awarded the driver and owner damages for negligent spoliation of evidence. (*Id.* at pp. 1289–1292.)

On appeal, the Court of Appeal reversed, concluding there is no tort cause of action for negligent spoliation of evidence. (*Lueter v. State of California, supra,* 94 Cal.App.4th at pp. 1289, 1299.) It explained: "Government Code section 815 specifies that, except as otherwise provided by statute, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. Government Code section 815.2, subdivision (a) provides that a public entity is liable for injury proximately caused by an act or omission of an employee within the scope of employment if the act or omission would give rise to a cause of action against the employee. Government Code section 820, subdivision (a) specifies that, except as otherwise provided by statute, a public employee is liable for injury to the same extent as a private person.

"Together these statutes establish two principles: (1) unless they are granted specific statutory immunity, a public entity and its employees are liable in tort for the same causes of action that could be brought against a private person; and (2) absent a statute specifically imposing liability, a public entity and its employees are not liable for causes of action in tort that could not be pursued against a private party.

"For the reasons stated above, the tort of negligent spoliation of evidence cannot be recognized against a private party. It follows that any liability for spoliation against a public entity and its employees must be created statutorily rather than judicially.

"In order to find a statutorily based cause of action for negligent spoliation, it is not enough to find that the public entity had a legal duty with respect to property. Even though a person may have a duty to preserve evidence, countervailing considerations dictate against an expansive, speculative tort of

---

[12] We note, however, that "decisional authorities do not foreclose an action in contract where the defendant is under a contractual obligation to preserve evidence. [Citations.]" (*Lueter v. State of California, supra,* 94 Cal.App.4th at p. 1299, fn. 3.)

spoliation. [Citations.] Instead, a duty to preserve evidence should be addressed through other means [citation], such as effective sanctions devised by the Legislature or by regulatory bodies. [Citation.] It follows that in order to establish a tort for spoliation of evidence, a statute must expressly impose a spoliation remedy." (*Lueter v. State of California, supra*, 94 Cal.App.4th at pp. 1299–1300.)

That Officer Swanberg told Strong he would provide him with the identifying information of the second driver does not compel a contrary conclusion. As the court in *Lueter* observed, "*Temple Community* concluded that it would be anomalous to impose tort liability upon third party spoliators when, in *Cedars-Sinai*, the court had refused to impose tort liability on litigants who had engaged in such behavior to secure an advantage in their own litigation. [Citation.] Certainly, it would be even more anomalous to impose tort liability upon a negligent spoliator whose conduct is not near so egregious as that of an intentional spoliator. In this case, for example, if defendants had testified that they knew the tire tread might have significance in a civil action and deliberately threw it away in order to avoid being embroiled in civil litigation, out of animus toward a party, or for other similar reasons, they could not be responsible for spoliation damages. But since their conduct was, at most, mere negligence, they were essentially forced to become retroactive insurers of plaintiffs. As recognized in *Farmers Ins. Exchange, supra*, 79 Cal.App.4th at page 1407, this created an absurdity." (*Lueter v. State of California, supra*, 94 Cal.App.4th at pp. 1295–1296.)

Without expressly disagreeing with the reasoning of *Leuter*, Strong insists this is not a spoliation case, arguing the identity of the second driver is not "evidence" and his claim is not for destruction of evidence but breach of the duty Officer Swanberg assumed to provide him with the information he would need to pursue a legal claim against the party who had injured him. The State responds, citing to case law discussing the sufficiency of the evidence of the identity of a defendant in a criminal case, that identifying information is, in fact, evidence. Moreover, Strong's claim is based on Officer Swanberg's loss or destruction of his investigative notes, not his failure to obtain the second driver's identity after promising to do so.

We are inclined to agree the loss or destruction of Officer Swanberg's notes sufficiently parallels the discarded tire tread in *Leuter* to fall within the rule against a tort for spoliation of evidence. However, we need not resolve that issue here; for even if Strong has established an otherwise actionable breach of duty by Officer Swanberg, his actions as part of the investigation of the traffic accident fall within the scope of the governmental immunity conferred by section 821.6.

D. *Governmental Immunity*

 Section 821.6 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." This immunity provision is to be construed broadly so as to further "its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits." (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1048 [55 Cal.Rptr.3d 158]; accord, *Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1293 [89 Cal.Rptr.2d 60].) For purposes of this immunity provision, investigations are deemed to be part of judicial and administrative proceedings. (*Paterson v. City of Los Angeles* (2009) 174 Cal.App.4th 1393, 1405 [95 Cal.Rptr.3d 333]; *Richardson-Tunnell v. Schools Ins. Program for Employees (SIPE)*, supra, 157 Cal.App.4th at p. 1062; *Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1209–1210 [34 Cal.Rptr.2d 319].)

The California Supreme Court has observed that although " 'section 821.6 has primarily been applied to immunize prosecuting attorneys and other similar individuals, this section is not restricted to legally trained personnel but applies to all employees of a public entity. [Citation.]' [Citation.] Section 821.6 'applies to police officers as well as public prosecutors since both are public employees within the meaning of the Government Code.' [Citation.]" (*Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, 756–757 [63 Cal.Rptr.2d 842, 937 P.2d 273].)

 The State maintains on appeal, as it did below, that since Officer Swanberg lost or destroyed the second driver's identifying information during the course of an official CHP investigation, he is cloaked with the immunity of section 821.6. We agree. Since Officer Swanberg is immune, so too is the State. (§ 815.2, subd. (b).) *Clemente II* upon which the trial court relied to conclude otherwise is inapposite, in that the applicability of section 821.6 was not an issue in *Clemente II*. It is a well-established principle of appellate law that a decision is only authority for the points actually involved and decided. (*Golden Gateway Center v. Golden Gateway Tenants Assn.* (2001) 26 Cal.4th 1013, 1029 [111 Cal.Rptr.2d 336, 29 P.3d 797]; *Santisas v. Goodin* (1998) 17 Cal.4th 599, 620 [71 Cal.Rptr.2d 830, 951 P.2d 399].)

For the foregoing reasons, we conclude that the judgment in favor of Strong must be reversed and a new judgment entered in favor of the State.

## DISPOSITION

The judgment is reversed. The matter is remanded with directions to vacate the judgment in favor of Strong and to enter judgment anew in favor of the State. Each party is to bear its own costs on appeal.

Perluss, P. J., and Woods, J., concurred.