[No. B016197. Second Dist., Div. Seven. June 25, 1987.]

CLAYTON WALKER, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to rules 976 and 976.1 of the California Rules of Court, part II is not certified for publication.

1394

## COUNSEL

Savin & Bursk, George J. Savin, Jr., and Bonnie Marie Bursk for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, and Dennis M. Gonzales, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**JOHNSON, J.**—As best our research indicates, this case raises an issue of first impression in California. Does a public employee create a "special relationship" with a private citizen by asking that citizen to perform a public function which involves a foreseeable risk of injury? If so, the public employee owes a duty of due care toward the private citizen and the public entity is liable to the private citizen for injuries caused by its employee's negligence. We hold a special relationship indeed is created by the public employee's request. We thus reverse the trial court which granted summary judgment against a private citizen injured while performing a public function at the behest of a public employee.

### FACTS AND PROCEEDINGS BELOW

This is a dog bite case with a different twist. Not "man bites dog" but "dog bites dog catcher," or more accurately, a dog catcher's helper.

With one important exception, the essential outline of the story is undisputed. On July 21, 1982, appellant Clayton Walker's mother-in-law called County Animal Control. She reported there were two dogs roaming in the Tujunga area that had been left or abandoned by their owners. The county dispatched Gail Miley, a uniformed animal control officer, to round up the animals. She managed to capture one of the abandoned dogs and put it in her truck. But she couldn't catch the second.

Officer Miley told the mother-in-law she would return later with a dog trap and make another attempt to capture the elusive canine. Appellant's mother-in-law replied her son-in-law might be able to help. Officer Miley then drove over to appellant's house and asked him if he would capture the dog. Appellant Walker said "yes" and obtained some dog biscuits. He went up the hill and managed to place a rope over the dog's head. However, when he brought the animal down the hill and near the truck the dog "freaked out" and bit Walker's thumb off.

On October 12, 1982, Walker filed a complaint seeking damages for personal injuries against the County of Los Angeles. He alleged the county's employee, Animal Control Officer Miley, failed to give him proper equipment and support, and otherwise had failed to exercise due care in connection with his attempt to capture the dog. On July 12, 1985, the superior court heard the county's motion for summary judgment. On August 13, 1985, the court granted the motion, then dismissed the complaint. The court based its ruling on a finding "The County of Los Angeles is immune under Government Code sections 820.2, 820.8 and 815.2" and the further ground "there was no special relationship of reliance on Officer Miley which would give rise to [a cause of action] ...."

Appellant filed a timely appeal.

## DISCUSSION

The trial court granted a summary judgment. ██ This court recently examined the standards for reviewing an order granting summary judgment (Code Civ. Proc., § 437c; "The summary judgment procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution. [Citation omitted.] Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is *no issue of fact to be tried*. [Citation omitted.] [¶] 'The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory.' [Citation omitted.] 'The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion.' [Citation omitted.]" *Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 626-627 [193 Cal.Rptr. 600], italics added.)

In deciding whether the trial court properly granted summary judgment, we must ask and answer two questions. First, did triable issues remain as to whether the plaintiff had a cause of action against the animal control officer, and through her, the county? Secondly, if so, were there triable issues remaining whether governmental immunity applied to insulate the defendant from liability for this cause of action? We find the facts present a potential cause of action and furthermore governmental immunity does not apply in this situation.

## I. A Governmental Officer Who Requests Assistance of a Private Citizen in the Performance of a Dangerous Task Which Is Part of the Officer's Official Duties and Which Is for the Benefit of the General Public Has a Duty of Due Care Toward That Private Citizen.

Los Angeles County, as a public entity, is liable for injuries proximately caused by their employees including animal control officers who are acting within the scope of their employment. (Gov. Code, § 815.2)[1] However, the county ordinarily is not liable if the employee's act or omission would not give rise to a cause of action against that employee (Gov. Code, § 815.2, subd. (a)) or if the employee is immune from liability (Gov. Code, § 815.2, subd. (b)). Thus, the county's liability depends on the liability of its employee, Animal Control Officer Miley.

In its brief the county argued it is not liable because plaintiff's action is not predicated on violation of any statute. In support of this position it pointed to Government Code section 815 which reads in pertinent part: *"Except as otherwise provided by statute*: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee . . . ." (Italics added.) The brief contended this code section "abolishes all common law or judicially declared forms of liability for public entities."

Understandably, the county did not press this contention at oral argument. What this argument neglects to recognize is that Government Code section 815.2 provides the statutory basis for this and many other causes of action. This section, as will be recalled, states: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." (Gov. Code, § 815.2, subd. (a). See fn. 1, *ante*.) It is undisputed Animal Control Officer Miley was a county employee acting within the scope of her employment when she sought to capture this stray dog and asked Walker to help out. Consequently, under the terms of section 815.2, subdivision (a) if she would be liable for an injury proximately caused by her acts and omissions during Walker's attempt to retrieve the animal, so would the county.

---

[1] Section 815.2 provides: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

"(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

This brings us quickly to the county's second—and far more serious—contention. It argues the county is not liable because the acts and omissions of its employee, the animal control officer, would not have given rise to a cause of action against that employee. Those acts and omissions could not form the basis for a cause of action because Officer Miley owed no duty to the plaintiff under the circumstances of this case.

### A. A Governmental Request for Assistance Can Create a "Special Relationship" Between the Government and a Private Citizen.

With the possible exception of "proximate cause" nothing in negligence law has confounded courts, law professors, or treatise writers more than the concept of duty. (See generally Prosser & Keeton, Torts (5th ed. 1985) pp. 356-385, especially pp. 373-385, and the numerous authorities cited therein.) What relationship must one person have with another and in what context before she must pay money to the other for her negligent action (or inaction). That is the basic question.

Drawing a boundary line around one's duty in the law of tort becomes even more complicated when we are inquiring into the liability of public employees and most especially when what is involved is something those employees failed to do rather than something they did—their omissions not their acts. Private citizens ordinarily do not owe an affirmative duty to save their fellow citizens from harm unless they personally created the risk. (Rest.2d Torts, § 314, see p. 1404, *infra*.)[2] But in a very real sense the general public pays public employees specifically for the purpose of having them assume an affirmative duty to aid everyone in that general public. Thus, if ordinary standards applied they might be held responsible in tort for every injury suffered by every member of society every time a public employee negligently failed to do something which could have prevented harm. However, it is feared this concept of duty might expose public employees and especially the public treasury to intolerable financial burdens. ■ To avoid this possibility, most jurisdictions have required something extra before public employees owe a duty in tort to do something to prevent injury to any member of the general public.

In California this concern is addressed by requiring a "special relationship" between the public employee and a specific private citizen before a duty is created. A "special relationship" exists if and only if an injured person demonstrates the public officer "assumed a duty toward [him] greater than the duty owed to another member of the public." (*Davidson v. City*

---

[2] But see, *Soldano* v. *O'Daniels* (1983) 141 Cal.App.3d 443 [190 Cal.Rptr. 310, 37 A.L.R.4th 1183], for a serious questioning of and minor incursion on this principle.

*of Westminster* (1982) 32 Cal.3d 197, 206 [185 Cal.Rptr. 252, 649 P2d 894].)

In prior cases California courts have found "special relationships" to arise where: (1) public employees *"create a foreseeable peril,* not readily discoverable by endangered persons, . . . ." (*Johnson* v. *State of California* (1968) 69 Cal.2d 782, 786 [73 Cal.Rptr. 240, 447 P.2d 352], italics added); or, (2) public employees *make a promise,* express or implied, they will undertake a special duty toward the plaintiff. (*Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6 [120 Cal.Rptr. 5]); or, (3) public employees *cause an injured person to rely* to his detriment in a situation *where* that *plaintiff* is *dependent* on the employees. *(Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82].)

■ The central question in this case is whether a "special relationship" is created when a public employee asks a private citizen to assist the employee in performance of a public function which involves a foreseeable risk of injury. The parties have not cited nor has our research uncovered any California appellate decisions on this issue. However, we have found opinions from the New York courts which are directly on point.

In *Adamo* v. *P. G. Motor Freight* (1957) 4 App.Div.2d 758 [164 N.Y.S. 2d 874], a police officer asked a private citizen to direct traffic at an intersection while he went to call in a report about an injured dog lying in the highway. The bystander was struck by a car while performing this task and sued. The trial court granted a motion to dismiss because no statute imposed a duty of due care on the police in that situation. (*Adamo* v. *P. G. Motor Freight* (1957) 5 Misc.2d 196 [159 N.Y.S. 2d 993].)[3] However, the appellate department summarily reversed this dismissal. The court held the absence of

---

[3] A statute did exist which applied only to arrest situations. This statute, New York Penal Code section 1848, imposed a duty on private citizens to assist in the apprehension of felons, if law enforcement officers asked them to do so. This same statute gave private citizens a cause of action in strict liability not merely negligence for any injuries they suffered while participating in the arrest. It is described in *Adamo* v. *P. G. Motor Freight, supra,* 5 Misc.2d 196 [159 N.Y.S.2d 993, 994], in the following terms:

"This section is entitled 'Refusing to aid an officer in making an arrest' and makes it a misdemeanor for a person to refuse or neglect to aid an officer 'in arresting any person, or in retaking [*sic*] any person who has escaped from legal custody, or in executing any legal process.' The section further provides that a person injured or damaged while obeying such a command shall have a cause of action to recover the amount of such damage or injury against the municipal corporation by which the officer is employed." Penal Code section 1848 did not apply in *Adamo* because a request to direct traffic is not a request to assist in an arrest. *(Ibid.,* and *Adamo* v. *P. G. Motor Freight, supra,* 4 App.Div.2d 758 [164 N.Y.S.2d 874].) Accordingly, the *Adamo* court did not rely on statutory law peculiar to New York but looked to general common law negligence principles which have potential relevance in California as well as New York.

statutory authority was irrelevant. "In our opinion, the cause of action *in negligence* is sufficient on its face. (Citations omitted.)" (*Adamo* v. *P. G. Motor Freight supra,* 4 App.Div.2d 758 [164 N.Y.Supp.2d at p. 875], italics added.)

New York's highest court cited this appellate department opinion with approval in its own subsequent decision which went still further in creating liability on the state where one of its employees invites assistance from private persons, *Schuster* v. *City of New York* (1958) 5 N.Y.2d 75 [180 N.Y.S.2d 265, 154 N.E.2d 534]. In that case the New York Court of Appeal held the city liable when its law enforcement officers failed to protect a citizen who had voluntarily come forward to inform on a dangerous felon—Willie Sutton—in response to an FBI flyer requesting information about the felon. The private citizen was killed and his heirs sued the city.

The Court of Appeal explained: "In our view the public (acting in this instance through the City of New York) owes a *special duty* to use reasonable care for the protection of persons who have collaborated with it in the arrest or prosecution of criminals, once it reasonably appears that they are in danger due to their collaboration. If it were otherwise, it might well become difficult to convince the citizen to aid and co-operate [*sic*] with the law enforcement officers. [Citation omitted.] To uphold such a liability does not mean that municipalities are called upon to answer in damages for every loss caused by outlaws or by fire. Such a duty to Schuster bespeaks no obligation enforcible [*sic*] in the courts to exercise the police powers of government for the protection of every member of the general public. Nevertheless, where persons actually have aided in the apprehension or prosecution of enemies of society under the criminal law, a reciprocal duty arises on the part of society to use reasonable care for their police protection, .... The *duty* of everyone *to aid* in the enforcement of the law, which is as old as history, *begets an answering duty* on the part of government, under the circumstances of contemporary life, reasonably to protect those who have come to its assistance in this manner." (*Schuster* v. *City of New York, supra,* 154 N.E.2d 534, 537, italics added.)[4]

[4] A growing number of other jurisdictions also impose a duty on government to protect private citizens who have supplied information about criminal activity. The breach of this duty gives rise to a cause of action in negligence. (*Miller* v. *United States* (E.D.Pa. 1983) 561 F.Supp. 1129 affd. 729 F.2d 1448 (3d Cir. 1984); *Leonhard* v. *United States* (2d Cir. 1980) 633 F.2d 599; *Peck* v. *United States* (S.D.N.Y. 1979) 470 F.Supp. 1003; *Crain* v. *Krehbiel* (N.D.Cal. 1977) 443 F.Supp. 202; *Huey* v. *Town of Cicero* (1968) 41 Ill.2d 361 [243 N.E.2d 214]; *Henderson* v. *City of St. Petersburg* (Fla. App. 1971) 247 So.2d 23 cert. den. 250 So.2d 643; *Swanner* v. *United States* (M.D.Ala. 1970) 309 F.Supp. 1183; *Gardner* v. *Village of Chicago Ridge* (1966) 71 Ill.App.2d 373, 219 N.E.2d 147.) A Federal court recently summarized the cause of action it distilled from several of these cases. "The elements ... are: (1) the police solicited information from the plaintiff; (2) the plaintiff aided the government by giving infor-

In a more recent case the New York Court of Claims likewise upheld a cause of action against the state where its employees had asked for assistance. There state police were pursuing a speeding motorist headed down a tollway. They radioed ahead and requested the toll booth collectors to block the lanes. The plaintiff was one of the collectors who complied with the officers' request and placed a wooden barrier athwart his lane. He was injured when the fleeing motorist crashed through the wooden barrier. The court held "a duty to exercise due care arose out of the troopers' very act of requesting assistance, since it set in motion a chain of events that led to [plaintiff's] injury." *(Ast* v. *State* (1984) 123 Misc.2d 200 [474 N.Y.S.2d 174, 177, 178].)[5]

We need not go as far as *Shuster* or *Ast* in order to resolve the instant case. These decisions create a far-ranging duty of care on behalf of any citizen who volunteers to respond to a *general* call for help. Moreover, *Schuster* and like cases (see fn. 3 *antè*) apparently establish a *long-term* duty to protect informers for as many weeks, months, or years as they may be in danger of retaliation. Nonetheless, we find the rationale of these New York opinions especially persuasive in the context of this case. It is difficult to imagine a situation where a public employee has affirmatively created a more direct "special relationship" or has taken on a more obvious "special duty to protect" than when she expressly asks a specific private citizen to perform all or part of the employee's public function, and especially when this public function involves a foreseeable risk of substantial harm. Both the public employee and the agency who employs her—and indeed the general public itself—stand to gain a benefit from a private citizen's performance of

mation; (3) the government knew or should have known that the plaintiff was in danger because he provided the government with information. In none of these cases did the government promise to protect or undertake to protect the plaintiff in the Good Samaritan Rule sense of an undertaking." *(Miller* v. *United States, supra,* 561 F.Supp. 1129, 1135-1136.) The analogs of these elements likewise are present in the instant case. (1) Officer Miley solicited Walker to capture the wild dog. (2) Walker aided the government by endeavoring to capture the dog. (3) Officer Miley knew or should have known that Walker was in danger of being bitten by the dog while he was endeavoring to capture it. Accordingly, Officer Miley had a duty to exercise due care to minimize the risk of injury *to* Walker.

[5] It should be noted New York Penal Code section 1848 (see fn. 1, *ante*) was not the source of the duty of care the government owed the private citizens in either *Schuster* or *Ast*. This section creates a statutory *strict liability* cause of action, but only for those private citizens whom police officers ask to assist with a specific arrest. Private citizens have a statutory duty to comply with the request and a corresponding statutory right to recover for injuries sustained *during* the arrest. The New York Court of Appeal held this statute did not apply to the informer in *Schuster,* in part because he was killed three weeks after Willie Sutton's arrest not during that arrest. *(Schuster* v. *City of New York, supra,* 5 N.Y.2d 75 [154 N.E.2d 534, 539].) The Court of Claims did not even mention Penal Code section 1848 in its *Ast* opinion. Instead both courts relied on common law negligence theories to create the duty of due care and to impose liability on the government agencies which sought assistance from their citizens.

the employee's public function. It is hardly fair for the public employee, the public entity, or the general public to then deny they owe any duty to protect the helper from a foreseeable risk of harm during the time he is out there doing work which benefits all of us.

Not only is there a quid pro quo involved and a moral reason for imposing a duty of due care in this situation but there is a sound public policy reason as well. The public presumably is well served by encouraging private citizens to comply with requests from public employees that they help out when needed. We would discourage such public spirited cooperation were we to tell private citizens they volunteered their assistance at their own risk. Conversely, by imposing a duty on public employees to minimize the risk of harm when they ask some private citizen to perform part or all of their own duties, we increase the supply of citizens willing to give necessary assistance.[6]

**B.** *The Animal Control Officer Requested Plaintiff's Assistance With a Task Which Carried a Foreseeable Risk of Injury and Thus Created a "Special Relationship" Giving Rise to a Duty of Due Care Toward Plaintiff.*

Turning to the instant case, there is at least a triable issue a Los Angeles County employee—Animal Control Officer Miley—had assumed a *special relationship* toward appellant. Indeed the county concedes Officer Miley requested appellant to assist in capturing the elusive canine. The county argues appellant "volunteered" to undertake this task. However, its own evidence puts an unusual meaning on the word "volunteer." The county does not contend nor does its evidence show appellant leaped out from a crowd yelling, "Please, please let me go after that dog." Instead what it reflects is Officer Miley drove over to appellant's house and specifically

---

[6]The discussion above expressly addresses several of the criteria in *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112-113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R..3d 496] for determining whether the law should impose a duty in tort. Specifically, we have found the requisite degree of moral blame attaches to defendant's conduct, the policy of preventing future harm is advanced, and the benefits to the community of imposing a duty outweigh the costs of placing that burden on the defendant. The remainder of the *Rowland* v. *Christian* criteria does not require extended discussion in the context of this case. But to complete the litany: First, a jury would be entitled to find it was foreseeable a person attempting to capture a near wild dog—or any dog, for that matter—would be in risk of being bitten by the animal unless properly equipped and supported in the endeavor. Secondly, the county does not dispute the allegation Walker lost his thumb to the dog's vicious bite. So there is sufficient certainty he suffered injury. Thirdly, if Walker proves his allegations, they will show a close connection between Animal Control Officer Miley's negligence and the loss of his thumb. And finally, it is far easier for the county to insure against the risk some private citizen will be injured when their employees ask him or her to assist them than for private citizens to insure against the risk they will be hurt while "coming to the aid of their county."

requested whether he would be willing to help out by capturing the stray animal this trained professional animal control officer had been unable to bring under control. True, there is no evidence in the record Officer Miley had to "draft" appellant to perform this public service. On the other hand, this is a case where the public employee personally asked an individual private citizen to discharge a public function ordinarily entrusted to that employee.[7] We find this is enough to create a "special relationship." From this special relationship flows a duty to minimize any foreseeable risk of harm to the private citizen which may be involved in doing what the public employee has asked him to do.[8]

There is no evidence in the record suggesting the function Officer Miley requested appellant to perform was risk free. To the contrary, she asked appellant to capture a stray dog which apparently had been roaming the wilds. The risk a dog—any dog—will bite and injure is so great that California statutes impose strict liability on dog owners for injuries their dogs cause. Even the tamest household pet is deemed dangerous enough to justify

---

[7]The New York courts found a specific request of an individual citizen is not required to create a duty of care; it is enough the citizen responds to a general call for assistance. (*Schuster* v. *City of New York, supra,* 5 N.Y.2d 75 [154 N.E.2d 534] [duty owed to citizen who responded to flyer that directed all citizens who might have information helpful to the government]; *Ast* v. *State, supra,* 123 Misc.2d 200 [474 N.Y.Supp.2d 174] [duty owed to toll booth collector who responded to broadcast to all toll booth collectors].) We need not reach the question whether public employees and their public employers owe a duty to any private citizen who responds to a general request for assistance. Here, as in *Adamo* v. *P. G. Motor Freight, supra,* 5 Misc.2d 196 [159 N.Y.S.2d 993] a public employee made a direct face-to-face request of an individual private citizen.

[8]We hold the public employee's request for assistance creates a duty of care toward the private citizen whose help is enlisted. This duty of due care does not depend upon any finding the private citizen has become some sort of temporary public employee. Accordingly, the cases which interpret the worker's compensation or public pension laws to deny coverage under those laws to private citizens who agree to perform some public function simply have no relevance here. (For cases denying worker's compensation, see, e.g., *City of Long Beach* v. *Industrial Acc. Com.* (1935) 4 Cal.2d 624 [51 P.2d 1089] [private detective denied worker's compensation from city where wounded while assisting arrest since was acting for private agency not as employee of city in performing this function]; *Dept. Nat. Resources* v. *Indus. Acc. Com.* (1929) 208 Cal. 14 [279 P. 987] [widow of volunteer game warden who drowned while performing that duty denied worker's compensation because statute only covered paid and not unpaid public officers]; *Page* v. *City of Montebello* (1980) 112 Cal.App.3d 658 [169 Cal.Rptr. 447] [dependents of murdered informant not entitled to pension since he did not qualify as employee of city]. It should be noted these cases turn on the precise wording of statutory definitions in the worker's compensation law and not on some overriding principle that private citizens who agree to perform public functions are never entitled to compensation when they are injured or killed. Indeed in some cases courts have found private citizens to be public employees within the meaning of the Worker's Compensation Act and approved the award of compensation. (See, e.g., *County of Monterey* v. *Industrial Acc. Com.* (1926) 199 Cal. 221 [248 P. 912, 47 A.L.R. 359] [child of private citizen commandeered into a sheriff's posse was entitled to worker's compensation award for his death since he qualified as an employee under the statutory definitions in effect at that time].)

strict liability. (Civ. Code, § 3342.)[9] A fortiori, the capture of a near wild dog who has been foraging without human supervision represents a task carrying a foreseeable risk of injury.

General principles of tort law as summarized in the Restatement of Laws likewise support our conclusion Officer Miley's request for assistance created a duty of due care toward the person who agreed to do so. Restatement of Torts, section 314, states the basic rule people are only liable for their negligent acts not for their negligent failure to act. "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." (Rest.2d Torts, § 314, p. 116.) The restatement then illustrates this rule. "[O]ne human being, seeing a fellow man in dire peril, is under no legal obligation to aid him, but may sit on the dock, smoke his cigar, and watch the other drown." (*Id.,* at p. 117.) As applied to the instant case, this means an ordinary bystander could have watched Walker knowing that he was in peril of being bitten by the dog because of the equipment he had been given to use, the method of capture, or whatever, yet have no legal obligation to aid him.

But Officer Miley was no mere bystander whose conduct is governed by section 314. Her role was something more than just "one human being seeing a fellow man [Walker] in dire peril." Instead her situation falls within the ambit of section 321, which reads in pertinent part: "If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, [she] is under a duty to exercise reasonable care to prevent the risk from taking effect." (Rest.2d Torts, § 321, p. 132.) In this case, Officer Miley's "act" was asking Walker to capture the wild dog. She "knew or should have known" this "created an unreasonable risk of causing physical harm" to Walker. Thus, Officer Miley was "under a duty to exercise reasonable care to prevent [this] risk from taking effect."

For these reasons, we conclude there is at least a triable issue whether Officer Miley, and through her the county, owed a duty of due care toward appellant Walker. Indeed assuming the evidence before the trial court on the summary judgment motion were the only evidence available on this issue, there would be no question but that this duty was owed. At the same time, we emphasize the duty owed is one of "due care." Neither Officer Miley nor the county are strictly liable for all injuries which might occur as

---

[9] Civil Code section 3342 reads in pertinent part: "The owner of any dog is liable for the damages suffered by *any person* who is bitten by the dog while in a public place or lawfully in a private place, including the property of the owner of the dog, *regardless of the former viciousness of the dog or the owner's knowledge* of such viciousness. . . ." (Italics added.)

a result of her request for assistance. The officer, and through her the county, are only liable to the extent she was negligent in failing to satisfy a standard of care commensurate with the type and degree of risk to which Walker was subjected.[10]

## II. ANY FAILURE TO EXERCISE DUE CARE TOWARD APPELLANT REPRESENTED A MINISTERIAL NOT DISCRETIONARY ACTION AND THUS GOVERNMENTAL IMMUNITY DID NOT APPLY.

. . . . . . . . . . . . . . . . . . . . . .*

### DISPOSITION

The judgment is reversed and the case remanded for further proceedings consistent with this opinion. Appellant to receive his costs on appeal.

Lillie, P. J., and Thompson, J., concurred.

On July 24, 1987, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied September 16, 1987.

---

[10] By this opinion we in no sense mean to imply an animal control officer creates a similar duty of due care by asking a dog owner to capture his own dog. Owners have a unique relationship with their dogs and have their own statutory duties to maintain control over these animals. (See, e.g., Civ. Code, § 3342 quoted in fn. 9.) Moreover, an owner exposes himself to a lesser risk of injury when personally engaged in the capture of his own dog than would anyone else, including an animal control officer. In order to resolve the instant case, we need not and do not resolve the question whether an animal control officer's request of a dog owner that he capture his own animal could *ever* give rise to a duty of due care toward the dog owner.

*See footnote page 1393, *ante*.