Filed 6/30/22  Diaz v. City of L.A. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

|  |  |
|---|---|
| SAMANTHA DIAZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF LOS ANGELES et al.,<br><br>    Defendant and Respondent. | B312296<br><br>(Los Angeles County<br>Super. Ct. No.<br>19STCV13193) |

APPEAL from an order of the Superior Court of Los Angeles County, Lia Martin, Judge. Affirmed.

Law Offices of Jude A. Akubuilo and Jude A. Akubuilo for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Scott Marcus, Senior Assistant City Attorney, Blithe S. Bock, Managing Assistant City Attorney, and Maureen M. Home, Deputy City Attorney for Defendant and Respondent.

# INTRODUCTION

Plaintiff and appellant Samantha Diaz sued the City of Los Angeles (City), alleging she was attacked and injured by dogs owned by a homeless man, Walter Underwood, while she was walking on a City sidewalk.[1] She alleged causes of action for premises liability, negligence, and maintenance of nuisance on public property. The trial court concluded Diaz failed to state facts sufficient to allege a cause of action against the City, and Diaz's proposed amendments to the complaint could not cure the defects. It therefore sustained the City's demurrer, without leave to amend, and dismissed the case.

Diaz appeals from the order of dismissal, contending the trial court: (1) erred because her complaint contained allegations sufficient to support each of her causes of action; and (2) abused its discretion by denying her request for leave to amend the complaint. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In the operative complaint, Diaz alleges Underwood acquired possession of "vicious dogs from the [City], through the [City's] adoption program on a date prior to the incident that is the subject matter of this action." "Underwood was known by [the City] to be a homeless person, who resided on the [City's] public property where he kept the vicious dogs he owned and possessed, following the adoption."

In 2018, Diaz was "mauled by dangerous dogs kept unrestrained on [City] property by . . . Underwood." "[E]mployees of the [City] failed to remove the dangerous dogs which they had

---

1      Diaz also sued Underwood. He is not a party to this appeal.

2

observed were tethered on City property in violation of Los Angeles Municipal Code, Sections 53.70(A), and 53.70(D),[2] knowing that the dogs created a dangerous condition on [City] property." Further, the City and its employees "knew from the history of the dogs, that they were vicious dogs, at the time that they gave [Underwood] the possession and ownership of the dogs when they knew, or ought to have known that [Underwood] was homeless and lived on public property owned by the [City]."

Following the incident, Diaz filed a complaint against Underwood and the City for premises liability and negligence, alleging a "dangerous condition existed on [City] property, (dangerous dogs), which [City] employees knew or ought to have known about." In response, the City filed a demurrer on the following grounds: (1) the first cause of action failed to allege facts demonstrating a "dangerous condition" within the meaning of Government Code section 835[3] (the sole statutory basis for a claim imposing liability on a public entity based on the condition of public property); and (2) the second cause of action failed to

---

2    Los Angeles Municipal Code section 53.70, subdivision (A) provides, in relevant part: "No person shall keep, use, or maintain a dog outdoors on any premises unless the dog is either provided with full access to an enclosed building, or if not provided with such access, is provided with access to a dog house or similar shelter at all times." Subdivision (D) provides, in relevant part: "It shall be unlawful for any person to tether, . . . restrain or cause a dog to be . . . tied or restrained to . . . trees . . . or highly immobile objects . . . for the purpose of confinement," except in certain circumstances.

3    All further undesignated statutory references are to the Government Code.

allege the City employees were negligent, and therefore, the City could not be held vicariously liable. The trial court sustained the City's demurrer with leave to amend.

Diaz subsequently filed a first amended complaint (FAC). Diaz amended the first cause of action for premises liability by adding an allegation that the City violated Los Angeles Municipal Code section 53.70, subdivisions (A) and (D), which allegedly created a dangerous condition on public property. With respect to the negligence cause of action, Diaz alleged the City was vicariously liable under section 815.2 based on its employees' failure "to deny [Underwood] the privilege to acquire vicious dogs without investigating whether he had an appropriate and safe place to keep such types of pets." Diaz also added a third cause of action for maintenance of nuisance on public property, in which she alleged the City "created or permitted a nuisance to exist" by allowing "vicious dogs given by [City employees] to [Underwood] to roam the public property, threatening and harming the public . . . ."

The City filed a demurrer to the FAC, contending the amendments did not cure the defects in the original complaint. In opposition, Diaz contended the FAC sufficiently alleged a dangerous condition on public property and the City negligently "failed to act in a timely manner to impose strict measures to assure the safety of the public." Diaz also filed a supplemental opposition arguing a new theory, i.e., that the dogs were obscured by a pile of junk on the sidewalk.

The trial court sustained the demurrer to the FAC without leave to amend. With respect to premises liability, the court held the FAC did not "allege any defect in the sidewalk itself (or in any other government property) but for the presence of a third

4

party's unrestrained dogs on a public sidewalk." With respect to negligence, the trial court held the FAC failed to allege a duty owed to Diaz by City employees, an essential element of a negligence cause of action. Finally, the trial court held the nuisance claim failed as a matter of law because the FAC neither alleged "statutory authority that employees had a duty to remove the dogs" nor that the "City created or assisted in the creation of the nuisance." The court denied leave to amend, explaining that adding allegations regarding a "pile of junk" cannot cure the defects in the FAC: "The presence of the pile of junk on adjacent property does not, by itself, establish that [Diaz] can amend the complaint to allege the City has liability."

The trial court entered an order dismissing the City from the action. Diaz timely appealed from the order of dismissal.[4]

## DISCUSSION

### A. The Trial Court Did Not Err By Sustaining the City's Demurrer to the FAC

Diaz contends the FAC alleges facts sufficient to state causes of action against the City for premises liability, negligence, and maintenance of nuisance on public property for injuries she sustained after being mauled by dogs on a sidewalk owned by the City.

"In considering whether [a] demurrer should have been sustained, we treat the demurrer as an admission by defendant[ ]

---

4 Although "[a]n order sustaining a demurrer without leave to amend is not appealable," an "appeal is proper . . . after entry of a dismissal on such an order." (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1396.)

5

of all material facts properly pled in plaintiff['s] first amended complaint—but not logical inferences, contentions, or conclusions of fact or law. [Citation.]" (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 152.) "[W]e review the complaint de novo to determine whether it contains sufficient facts to state a cause of action." (*Czajkowski v. Haskell & White, LLP* (2012) 208 Cal.App.4th 166, 173.)

### 1. Premises Liability

"The nature and extent of a public entity's liability for an injury suffered on its property is governed by statute, specifically the Government Claims Act." (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1129 (*Metcalf*).) "'[A] public entity is not liable for injuries except as provided by statute (§ 815) and . . . section 835 sets out the exclusive conditions under which a public entity is liable for injuries caused by'" the condition of public property. (*Metcalf, supra*, 42 Cal.4th at p. 1129.)

Section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 [defining actual and constructive notice] a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

6

Section 830, subdivision (a) defines a dangerous condition as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." "Although there need not be any physical defect in property owned by a public entity, there must be something about the physical condition of the property where an injury occurred which increased the risk of harm to plaintiffs." (*Pekarek v. City of San Diego* (1994) 30 Cal.App.4th 909, 916, fn. omitted.)

Applying the above-stated principles, we conclude the FAC fails to allege a "dangerous condition" within the meaning of section 835. The FAC alleges the "dogs created a dangerous condition on [City] property." Paragraph 9 of the FAC also inconsistently alleges the dogs were "unrestrained" and "tethered on City property." The dogs themselves, however, do not constitute a "dangerous condition" of the sidewalk whether they were "unrestrained" or "tethered." (See *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1135 (*Zelig*) ["[L]iability is imposed [against the City] only when there is some defect in the property itself and a causal connection is established between the defect and the injury"].) Here, the FAC fails to allege a defect in the sidewalk itself; rather, it alleges Diaz was mauled by "dangerous dogs kept unrestrained on [City] property by [Underwood]" or "tethered on City property." A third party's negligence or unlawful conduct alone (i.e., Underwood's failure to restrain the dogs or tethering dogs to a tree in violation of the Los Angeles Municipal Code) is insufficient to hold the City liable under section 835. (See *Zelig, supra,* 27 Cal.4th at p. 1137 ["'[T]here is no liability for injuries caused *solely* by acts of third

7

parties. [Citations.] Such liability can arise only when third party conduct is coupled with a defective condition of property.' [Citation.]"].)

Moreover, the City's alleged failure to remove and impound dogs tethered to City property in violation of the Los Angeles Municipal Code is irrelevant to whether a "dangerous condition" existed on City property under section 835. As noted above, the FAC fails to allege a physical condition of the sidewalk increased Diaz's risk of being harmed, but rather alleges the conduct of a third party (i.e., Underwood's failure to restrain the dogs) caused her injuries.

Accordingly, we conclude the FAC fails to state a cause of action against the City based on the alleged "dangerous condition" of public property.[5]

## 2. Negligence

The FAC alleges the City is vicariously liable under section 815.2 for the "acts or omissions" of City employees. Under section 815.2, subdivision (a), a public entity is vicariously liable for the tortious acts and omissions of its employees committed within the scope of employment under circumstances in which the employee would be personally liable for the conduct. "The elements of a negligence cause of action are duty to use due care and breach of duty, which proximately causes injury." (*Lopez v. City of Los Angeles* (2011) 196 Cal.App.4th 675, 685.) "Thus, in a cause of action for negligence, the existence and extent of an entity's

5 We note the FAC lumps allegations of negligence and nuisance all under the heading of "premises lability." We will address those allegations below under the appropriate causes of action.

8

vicarious liability under [section 815.2, subdivision (a)], will be determined by the scope of duty legally attributed to its employees." (*Torsiello v. Oakland Unified School Dist.* (1987) 197 Cal.App.3d 41, 45.)

"'As a general rule one has no duty to control the conduct of another, and no duty to warn those who may be endangered by such conduct. [Citations.] A duty may arise, however, where "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection." [Citations.]'" (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 933.) A special relationship exists "if and only if an injured person demonstrates the public [employee] 'assumed a duty toward [her] greater than the duty owed to another member of the public.' [Citation]." (*Walker v. County of Los Angeles* (1987) 192 Cal.App.3d 1393, 1398-1399.) The special relationship rule is "narrow, to be applied in a limited class of unusual cases." (*Minch v. Department of California Highway Patrol* (2006) 140 Cal.App.4th 895, 905.) California courts have found "special relationships" to arise where: (1) public employees "'*create a foreseeable peril*, not readily discoverable by endangered persons, . . . .' [citation]; or, (2) public employees *make a promise*, express or implied, they will undertake a special duty toward the plaintiff. [citation]; or, (3) public employees *cause an injured person to rely* to his detriment in a situation *where* that *plaintiff* is *dependent* on the employees. [Citation.]" (*Walker v. County of Los Angeles* (1987) 192 Cal.App.3d 1393, 1399.)

We conclude the FAC fails to allege a special relationship between City employees and Diaz giving rise to a duty of care.

9

The FAC alleges City employees breached their duty to Diaz by: (1) failing to deny Underwood the privilege of acquiring dangerous dogs without first investigating whether he had an appropriate and safe place to keep them; (2) allowing Underwood to keep the dogs on City property with knowledge the dogs were dangerous and prone to attacking pedestrians; and (3) failing to enforce applicable sections of the Los Angeles Municipal Code to remove and impound the dogs from City property. Based on these allegations, however, the City animal shelter employees did not know Underwood would not, or could not, control the dogs (even if they knew he was homeless). The City did not, therefore, "'create a foreseeable peril, not readily discoverable by endangered persons.'" (*Walker, supra*, 192 Cal.App.3d at p. 1399, italics omitted.) Further, the FAC does not allege Diaz had any contact with City employees. Thus, it alleges no facts establishing the City employees had undertaken special duties to protect Diaz or done anything to induce Diaz to rely on a promise of special protection. (See, e.g., *Zelig, supra*, 27 Cal.4th at pp. 1129-1130 [a special relationship exists in limited circumstances where it is alleged that "'detrimental reliance by the plaintiff on the [employee's] conduct [or] statements made by [the employee] . . . induced a false sense of security and thereby worsened her position'" or a public employee "voluntarily assumes a duty to provide a particular level of protection, and then fails to do so"].) Finally, liability cannot be imposed on the City for its alleged failure to enforce the Municipal Code. (See § 818.2 ["A public entity is not liable for an injury caused . . . by failing to enforce any law."]; see also § 821 ["A public employee is not liable for an injury caused . . . by his failure to enforce an enactment."].)

We therefore conclude the allegations in the FAC do not state a cause of action for negligence against the City.

### 3. Nuisance

Civil Code section 3479 defines nuisance as: "Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway . . . ."[6]

The FAC's cause of action for nuisance merely incorporates the allegations of the first and second causes of action, with the addition of the following allegation: the City and its employees "permitted a nuisance to exist on City property in that, they allowed the vicious dogs given by them to [Underwood] to roam the public property, threatening and harming the public, to wit, the plaintiff in this action." The nuisance cause of action, therefore, relies entirely on facts asserted in support of the causes of action for premises liability and negligence.[7] Having concluded

---

6    Our Supreme Court has held the Government Claims Act "does not bar nuisance actions against public entities to the extent such actions are founded on section 3479 of the Civil Code or other statutory provision that may be applicable." (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 937.)

7    In her reply brief on appeal, Diaz concedes the nuisance cause of action is "based on the factual allegations in the original form complaint filed by [Diaz]." As stated above, the original

11

those claims fail as a matter of law, we likewise conclude the FAC fails to allege facts sufficient to state a cause of action for nuisance. (See *Melton v. Boustred* (2010) 183 Cal.App.4th 521, 542 ["'Where negligence and nuisance causes of action rely on the same facts about lack of due care, the nuisance claim is a negligence claim.' [Citation.] The nuisance claim 'stands or falls with the determination of the negligence cause of action' in such cases"].)

In her reply brief on appeal, Diaz relies for the first time on *Leslie Salt Co. v. San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605 (*Leslie Salt*) for the proposition that the City may be held liable for public nuisance based on its failure to act (i.e., failure to remove the dangerous dogs tethered to a tree). The *Leslie Salt* holding, however, has no application to this case. The *Leslie Salt* court considered "whether the McAteer-Petris Act (Gov. Code, § 66600 et seq.), which created the San Francisco Bay Conservation and Development Commission (BCDC) and defines its jurisdiction and powers, allows BCDC to hold a landowner responsible for unauthorized bay fill placed on its property by unknown third persons." (*Leslie Salt, supra*, 153 Cal.App.3d at pp. 608-609, fn. omitted.) Noting that under the common law, "liability for a public nuisance may result from *the failure to act* as well as from affirmative conduct[,]" the court held that "if specific conduct . . . is proscribed by *statute* – as clearly it is by the McAteer-Petris Act – then, consistent with the common law rule, one may be held in violation of that statute" even if the defendant did not know of or intend to cause harm. (*Id.* at p. 619.)

complaint only included causes of action for premises liability and negligence.

12

In contrast to *Leslie Salt*, here, no statute proscribes the conduct at issue; as discussed above, no statute imposes a duty on the City to warn Diaz about the dangerous dogs or mandates that the City remove dogs tethered to trees.

## B. The Trial Court Did Not Abuse Its Discretion By Denying Diaz's Request for Leave to Amend

Alternatively, Diaz contends the defects in the FAC can be cured by amendment. We disagree.

"If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

Diaz contends she set forth additional facts to support a second amended complaint in her supplemental opposition to the City's demurer, including that a "pile of junk" concealed the dangerous dogs from Diaz's view as she walked on the sidewalk. She alleges the pile of junk constituted a dangerous condition within the meaning of section 835. A pile of junk on City property, however, does not sufficiently allege a "dangerous condition" under section 835. Diaz has not alleged the City was responsible for the pile of junk or that the City had actual or constructive knowledge of it. (See § 835.)

We also reject Diaz's contention that additional allegations regarding the City's "actual knowledge of the existence of the dangerous condition of the dogs on public sidewalks" can cure the

defects in the FAC. As discussed above, the dogs do not constitute a "dangerous condition" of the sidewalk. And, even assuming the City employees had actual knowledge the dogs were dangerous, the employees had no duty to warn Diaz of Underwood's alleged negligent conduct of failing to restrain the dogs.

Because Diaz's proposed amendments cannot cure the defects in the FAC, the trial court did not abuse its discretion by sustaining the demurrer without leave to amend.

## DISPOSITION

The order of dismissal is affirmed. The City is awarded its costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

CURREY, J.

We concur:

WILLHITE, Acting P.J.

COLLINS, J.

14