Filed 7/7/22  Michelman v. City of L.A. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RYAN MICHELMAN, | B311658 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV45379) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Affirmed.

Ryan Michelman, in pro. per, for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Scott Marcus, Chief Assistant City Attorney, Blithe S. Bock, Assistant City Attorney, and Sara Ugaz, Deputy City Attorney, for Defendants and Respondents.

\* \* \* \* \* \*

Ryan Michelman (plaintiff) sued the City of Los Angeles (the City) and two of its employees for not properly investigating and prosecuting the person who assaulted him. The trial court dismissed plaintiff's lawsuit. This was correct, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts[1]

#### A.    *The underlying assault*

In 2017, plaintiff was an Uber driver. Plaintiff had immigrated to the United States from Asia.

On October 2, 2017, plaintiff picked up a passenger who appeared to be of Korean descent and who used the name "Maverick." After plaintiff refused to use the passenger's preferred route to his destination, the passenger started hitting the back of plaintiff's head with his fist and, when plaintiff turned his head, landed a blow near plaintiff's right eye and broke plaintiff's sunglasses. When plaintiff called 911, the passenger hopped out of the car and fled on foot.

#### B.    *Investigation and nonprosecution of passenger*

Two Los Angeles Police Department (LAPD) officers responded to plaintiff's 911 call. The officers interviewed plaintiff about the incident, documented plaintiff's injuries, and obtained from plaintiff the destination address the passenger had provided for his Uber ride.

---

1    These facts are drawn from plaintiff's complaint.

2

In January 2018, the LAPD detective assigned to the incident, Fernando Pantoja (Pantoja), asked plaintiff to come down to the police station to see if plaintiff could identify his assailant. Plaintiff elected not to show up as agreed, but later showed up on another date. Although Pantoja put a photograph of the person whose name plaintiff provided from the Uber records into a six- or eight-person photospread, plaintiff said his assailant was not in the photospread. Plaintiff spoke with Pantoja afterwards, and from that conversation came to the conclusion that "obviously no charges will ever be filed."

The City Attorney did not prosecute anyone for the assault.

### C. *Nonpresentation of a claim to the City*

On May 9, 2019, plaintiff wrote a letter to the Los Angeles City Attorney, Michael Feuer (Feuer), complaining about the City's failure to prosecute the person whose information he had provided from the Uber records and expressing plaintiff's intent to sue the City.

Plaintiff did not present a claim to the City through its established claims presentation procedure before filing his lawsuit.

## II. Procedural Background

### A. *Pleadings*

On December 19, 2019, plaintiff sued the City, the Los Angeles City Attorney's Office, the LAPD, as well as Feuer and Pantoja in their individual capacities (collectively, defendants).

The complaint alleges that the investigation was defective for several reasons. Pantoja did not use the proper procedures to obtain information from Uber about the passenger. Pantoja was also wrong to ask plaintiff to identify his assailant from a photospread because the information eventually obtained from

3

Uber was, in plaintiff's view, sufficient by itself to file charges. And even if a photospread was an appropriate investigative technique, the photospread was *either* (1) misleading, because the passenger's photo was not in the photospread, *or* (2) unfair, because the passenger's photo was in the photospread but the photos were all too old and did not fill all six or eight slots with persons of Korean descent.

The complaint alleges 12 separate claims, but they fall into two broad categories.

The first category consists of the nine claims that are based on defendants' failure to properly investigate and to file charges. Plaintiff alleges that these failures were due to "willful sabotage" (first claim), "favoritism" (third claim), "corruption and/or bribery" (fourth claim), a "conspiracy" (fifth claim), "collusion" (sixth claim), "fraud" (seventh claim), a "breach of fiduciary duty" as "public officials" (eighth claim), and "bad faith" (ninth claim)— and that defendants' failure to fess up to their ulterior motives "deceived" plaintiff (second claim). Specifically, plaintiff alleges that Pantoja "deliberate[ly] . . . sabotage[d] the investigation," either because he was bribed or because Uber was pressuring the LAPD not to proceed to avoid any resulting bad press.

The second category consists of the remaining three claims, which characterize defendants' failure to properly investigate and prosecute as constituting "discrimination" (tenth claim), a "violation of [plaintiff's] civil rights" (eleventh claim), and the "denial of equal protection" (twelfth claim). To support this subset of claims, plaintiff alternatively alleges that defendants (1) discriminate against immigrants (like plaintiff) who are victims of crime, but discriminate in favor of immigrants (like the passenger) who perpetrate crimes, (2) discriminate against Uber

4

drivers but discriminate in favor of Uber passengers, and (3) discriminate in favor of persons of Korean descent generally.

Plaintiff seeks an injunction suspending Pantoja and Feuer from their positions, general and specific damages, punitive damages, and attorney fees.

### B.   *Demurrer*

The City, Pantoja, and Feuer filed a demurrer to the complaint.[2]  After further briefing and a hearing, the trial court sustained the demurrer without leave to amend, dismissed plaintiff's lawsuit without prejudice, and entered judgment for the City, Pantoja, and Feuer.[3]

Plaintiff filed this timely appeal.

## DISCUSSION

Plaintiff argues that the trial court erred in sustaining the demurrer to his complaint without leave to amend.

---

[2]   The LAPD and the Los Angeles City Attorney's Office did not join in the demurrer.  That is because they are part of the City itself.  (See *Valdez v. City of Los Angeles* (1991) 231 Cal.App.3d 1043, 1060, fn. 4 [LAPD not a separate entity who can be sued]; L.A. Charter, § 270 et seq. [City Attorney is one office within the City of Los Angeles].)  Thus, plaintiff is incorrect in suggesting that the failure of the LAPD or Los Angeles City Attorney's Office to join the demurrer or otherwise answer his complaint constitutes a default to the complaint warranting entry of judgment in his favor.

[3]   We grant the motion filed by the City, Pantoja, and Feuer to augment the record on appeal to include defendants' request for judicial notice filed in the trial court in support of their demurrer and the trial court's minute order ruling on the demurrer.

"In reviewing a trial court's order sustaining a demurrer without leave to amend, we must ask (1) whether the demurrer was properly sustained, and (2) whether leave to amend was properly denied." (*Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1335.) The first question requires us to "independently evaluate whether the operative complaint states facts sufficient to state a cause of action" (*Alborzian v. JPMorgan Chase Bank, N.A.* (2015) 235 Cal.App.4th 29, 34), and in so doing, we accept as true "all material facts properly pled" in that complaint (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 152). The second question "requires us to decide whether ""there is a reasonable possibility that the defect [in the operative complaint] can be cured by amendment.""" (*McClain v. Sav-On Drugs* (2017) 9 Cal.App.5th 684, 695, affd. (2019) 6 Cal.5th 951.) Because plaintiff proffers no suggestion on how to further amend his complaint and because we perceive no viable way to do so, the propriety of the dismissal order in this case turns entirely on whether his complaint states one or more viable causes of action.

## I. Analysis

We independently agree with the trial court that plaintiff's complaint was properly dismissed on demurrer.

### A. *Noncompliance with the Government Claims Act*

California's Government Claims Act (Gov. Code, §§ 810 et seq.)[4] (the Act) is a set of statutes that waives our State's sovereign immunity and empowers plaintiffs to sue "public entities and their employees" for "all noncontractual bases of compensable damage or injury that might be actionable between private persons." (*Caldwell v. Montoya* (1995) 10 Cal.4th 972,

---

[4] All further statutory references are to the Government Code unless otherwise indicated.

980; *Leon v. County of Riverside* (2021) 64 Cal.App.5th 837, 846 (*Leon*); § 815, subd. (a).) The liability of a public entity under the Act is tied to the liability of its employee(s): If the public employee would be liable to the plaintiff for acts undertaken within the scope of employment, the public entity will be held liable; but if the public employee is not liable or is immune from liability, so too is the public entity. (*Walker v. County of Los Angeles* (1987) 192 Cal.App.3d 1393, 1397; § 815.2, subds. (a) & (b).)

The Act erects an absolute procedural prerequisite before its waiver of sovereign immunity applies—namely, the putative plaintiff must first notify the public entity of its potential liability by presenting a timely "written claim." (§ 945.4.) To be timely, the claim must satisfy specific deadlines: If the plaintiff wishes to sue for "death" or "injury to person or to personal property," the plaintiff must present a written claim with the public entity "not later than six months after the accrual of the cause of action"; if the plaintiff wishes to sue for any other injury, the claim must be filed "not later than one year after the accrual of the cause of action." (§ 911.2, subd. (a).) A plaintiff's failure to comply with the Act's claim requirement bars any subsequent lawsuit against the public entity or public employee, and thus provides a ground for sustaining a demurrer. (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 737-738; *State of California v. Superior Court* (*Bodde*) (2004) 32 Cal.4th 1234, 1239.)

Plaintiff's entire complaint is barred by the Act because plaintiff failed to comply with the Act's claim-presentment requirement before filing his lawsuit. A cause of action "accrues . . . when the plaintiff has reason to suspect an injury and some wrongful cause . . . ." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005)

35 Cal.4th 797, 803.) Here, plaintiff alleges that he realized that the investigation was defective and that his assailant would never be prosecuted in January 2018. Even if we treat plaintiff's May 2019 letter to the City Attorney as substantially complying with the claim-presentation requirement, that letter—and hence plaintiff's claim—was not presented until 16 months after his cause of action accrued. That exceeds both the six-month and 12-month claims presentation deadlines in the Act.

Plaintiff resists this conclusion with what boils down to three arguments.

First, he argues that the passenger's punches to the back of his head and the side of his eye caused one of his teeth to fall out six months after the incident; that this additional injury elevates the misdemeanor battery to a felony; that felony charges may be filed up to three years after the crime (Pen. Code, § 801); and that he accordingly did not know his assailant would not be prosecuted until October 2020. We reject this argument because the accrual date in this case was triggered by plaintiff's subjective awareness—as he himself alleges in the complaint—that he knew, *in January 2018*, that his assailant would not be prosecuted. Plaintiff cannot now ask us to ignore his allegation and instead treat the statutory deadline for filing charges as the accrual date. And even if we accepted plaintiff's argument, it would apply at most to his claims against defendants in their prosecutorial role, and in that role they enjoy absolute immunity for the reasons discussed below.

Second, plaintiff argues that he had difficulty complying with the City's electronic claims presentation protocols in February 2020. This is irrelevant because, by that time, plaintiff

8

had already filed his lawsuit and, therefore, had not exhausted the claims-presentment requirement.

Third, plaintiff argues that the Act is preempted by the Federal Tort Claims Act (the Federal Act) (28 U.S.C. § 2671 et seq.) because it offers a longer claims-presentation period. Plaintiff is wrong.  There is no provision of the Federal Act that *expressly* preempts all claims presentation periods under state government claims acts.  (*English v. General Electric Co.* (1990) 496 U.S. 72, 78-79.)  And nothing in the Federal Act *implicitly* does so.  That is because, as noted above, the function of so-called "government claims acts" is to waive sovereign immunity; when a government elects to waive its sovereign immunity, it "may impose conditions as a prerequisite to the commencement of [any] action against it . . . ."  (*Carr v. State of California* (1976) 58 Cal.App.3d 139, 142-144.)  Because the federal government and the states are independent sovereign entities, the federal government may elect to waive *its* sovereign immunity on conditions different than those of the states.  Thus, the Federal Act in no way intends to "occupy the field."  (*Hillsborough County v. Automated Medical Laboratories, Inc.* (1985) 471 U.S. 707, 713.)  Further, nothing about the states electing to have different conditions for the waiver of their sovereign immunity in any way interferes with or obstructs the purpose of the Federal Act. (*Hines v. Davidowitz* (1941) 312 U.S. 52, 67; *Crosby v. National Foreign Trade Council* (2000) 530 U.S. 363, 373.)

**B.** *Failure to state a claim*

1. *Lack of standing*

As to the first category of claims attacking the failure *to prosecute*, plaintiff lacks standing.  That is because the decision whether and how to prosecute crimes is solely entrusted to the

9

discretion and judgment of the executive branch.  (§ 26500; *Sundance v. Municipal Court* (1986) 42 Cal.3d 1101, 1132; *Dix v. Superior Court* (1991) 53 Cal.3d 442, 451 (*Dix*) ["The prosecution of criminal offenses on behalf of the People is the sole responsibility of the public prosecutor."].)  As a result, victims of crime have no standing to sue public officials for how that discretion is exercised, which includes the decision *not* to prosecute.  (*Dix*, at p. 452; *Linda R.S. v. Richard D.* (1973) 410 U.S. 614, 619.)  Lack of standing is an appropriate basis for sustaining a demurrer.  (*McKinny v. Board of Trustees* (1982) 31 Cal.3d 79, 90.)

    2.  *Statutory immunity*

   All of plaintiff's claims are barred by section 821.6.  In pertinent part, that provision provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial . . . proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  (§ 821.6.)  Although the plain terms of the statute immunize public employees who "prosecut[e]" crimes and "institut[e]" criminal prosecutions, the immunity from liability also reaches public employees who investigate crimes "[b]ecause investigation is 'an essential step' toward the institution of formal proceedings." (*Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1209-1210 (*Amylou R.*); *Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, 757 (*Asgari*); *Leon, supra*, 64 Cal.App.5th at pp. 846, 855; *Roger v. County of Riverside* (2020) 44 Cal.App.5th 510, 528 (*Roger*); *Lawrence v. Superior Court* (2018) 21 Cal.App.5th 513, 526; *Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1047-1048 (*Gillan*); *Baughman v. State of California* (1995) 38 Cal.App.4th 182, 192.)

The purpose of this immunity is "to protect public employees in the performance of their prosecutorial [and investigative] duties from the threat of harassment through civil suits." (*Gillan, supra,* 147 Cal.App.4th at p. 1048.) As a result, this immunity applies no matter who is suing, and thus bars lawsuits by crime victims against investigators and prosecutors. (*Amylou R., supra,* 28 Cal.App.4th at p. 1211.) With the exception of claims alleging false arrest or false imprisonment (*Asgari, supra,* 15 Cal.4th at pp. 752-753; *Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710, 721), this immunity also applies no matter the nature of the plaintiff's claim(s), and thus encompasses claims based on allegedly discriminatory motive (*Ross v. San Francisco Bay Area Rapid Transit Dist.* (2007) 146 Cal.App.4th 1507, 1516 [immunity applies to discrimination-based claims]; *Roger, supra,* 44 Cal.App.5th at p. 527 [immunity applies to intentional infliction of emotional distress and defamation]). And, as is pertinent to this case, this immunity applies even when ultimate result is the *failure* to prosecute (*County of Los Angeles v. Superior Court* (2009) 181 Cal.App.4th 218, 229; *Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1293); this makes sense because the language of section 821.6 is aimed most readily at malicious prosecution claims, and the wrongful decision *not* to prosecute is merely the flip side of the same coin as the wrongful decision *to* prosecute.

All 12 of plaintiff's claims fall within the scope of the immunity conferred by section 821.6, and are therefore properly dismissed on demurrer. (*Bocanegra v. Jakubowski* (2015) 241 Cal.App.4th 848, 856-857.) Each claim faults the City's investigators or prosecutors for the decisions they made as to how to investigate the October 2017 assault on plaintiff and the

11

decision they made not to prosecute anyone for that assault. In these respects, this case is analogous to *Strong v. State of California* (2011) 201 Cal.App.4th 1439. There, the court held that section 821.6 barred a lawsuit against a California Highway Patrol officer who lost or destroyed information that would have allowed the officer to track down a third party who injured the plaintiff in a collision. (*Id.* at pp. 1445, 1449-1450, 1461.)

## II.     Plaintiff's Remaining Arguments

Plaintiff raises three more contentions on appeal.

First, he contends that his right to procedural due process was violated because (1) the trial court's hearing on the demurrer lasted only "two minutes," and (2) the trial court made it difficult for plaintiff to assemble the record on appeal. There is no reporter's transcript in this case, so we have no idea (beyond plaintiff's representations in his appellate briefs) regarding the duration of the hearing. But even if we accept that the hearing was two minutes long, the question on demurrer is a legal question that turns on the content of the complaint, not any evidence or argument presented at the hearing. Further, plaintiff's difficulty in assembling materials for the appeal is irrelevant to the substantive merit of the appeal.

Second, plaintiff contends that he should be reimbursed $100 for the costs he incurred applying to serve the summons by publication after defendants did not return an acknowledgement of receipt of the summons plaintiff served on them by mail. (Code Civ. Proc., § 415.30, subd. (d).) This alleged error is not properly before us. The record on appeal does not include any proof that plaintiff complied with the requirements for service by mail that could entitle him to an award of costs. (*Id.*, subds. (a), (b).) What is more, there is no indication in the record that plaintiff ever

requested an award of these costs in the trial court. (*Id.*, subd. (d).)

Lastly, plaintiff contends that we cannot affirm because respondent's brief by the City, Pantoja, and Feuer was not timely filed. The brief was filed on time because it was filed by the date specified in our default notice. But even if the brief were filed late and disregarded, our task is to evaluate the merits of *plaintiff's* appeal; the absence of a respondent's brief does not relieve us of that duty. (*In re Bryce C.* (1995) 12 Cal.4th 226, 232-233.) As explained above, we have independently concluded that the trial court did not err.

## DISPOSITION

The judgment is affirmed. The City, Pantoja, and Feuer are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ