Filed 12/6/23  Daves v. City of Cathedral City CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

---

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

---

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CHERYLYN DAVES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF CATHEDRAL CITY et al.,<br><br>    Defendants and Respondents. | D082253<br><br><br>(Super. Ct. No. PSC1902338) |


APPEAL from a judgment of the Superior Court of Riverside, Kira L. Klatchko, Judge.  Reversed and remanded.

Walter Clark Legal Group and Jessica A. Albert, for Plaintiff and Appellant.

Graves & King, Harvey W. Wimer III, Michael D. Sargent, and Brendan J. Coughlin, for Defendants and Respondents.

Cherylyn Daves, a phlebotomist, was struck and injured by a car as she prepared to assist police officers in obtaining a blood sample from a DUI suspect.  Seeking redress for her injuries, Daves sued four of the officers and their employer—Jesse Borrego, Steven Lara, Jesse Vela, Ryan Schroeder, and the City of Cathedral City (the City)—alleging a cause of action for

negligence against the officers and a cause of action for vicarious liability against the City. The officers and the City filed a motion for summary adjudication, and the trial court granted the motion and entered judgment in their favor. Daves now appeals the judgment, arguing the trial court erred in: (1) concluding that Daves could not establish the essential element of a duty on which to premise her negligence and vicarious liability causes of action as against Borrego and the City and (2) concluding that the immunity that Government Code sections 820.2 and 815.2, subdivision (b) confer upon public employees and public entities for discretionary acts insulated Borrego and the City from liability in any event. We agree with Daves. Hence we reverse.

## I.

## BACKGROUND

### A. *The Evening on Which Daves Sustained Her Injuries*

The genesis of this case is a pair of collisions that occurred late one night in Cathedral City, near the intersection of Cathedral Canyon Drive and Dinah Shore Drive. The first of the two collisions drew Borrego, Vela, Lara, and Schroeder (the four officers) to the scene. Suspecting that a driver involved in this collision had been driving while under the influence of drugs or alcohol (DUI), Borrego asked for a forensic evidence collection service to be sent to the scene to draw blood; and the City contractor to which the request was relayed—American Forensic Nurses—sent Daves.

When Daves arrived at the scene, Borrego told her the officers wanted to collect a blood sample from the DUI suspect in a "grassy area adjacent to the sidewalk and curb" "at the southeast corner of the subject intersection." Depending on whose version of the interaction is to be believed, Borrego also pointed out (or did not point out) a nearby marked police car parked in a

2

northbound lane of Cathedral Canyon Drive and directed (or did not direct) Daves to proceed to that location and park her car there.

Daves then drove to the location that she says Borrego had designated, parked her car there, and began preparing the materials she would need to complete the blood draw. But "[w]hile [she] was standing in front of her vehicle and preparing to collect the blood evidence, another vehicle . . . collided with [her] vehicle, pushing it into [her]" and causing her injuries.

**B.** *Proceedings Below*

**1. Causes of Action Alleged Against the Officers and the City**

Daves and her husband, Thom Daves, filed claims against the City, Thereafter, they initiated this lawsuit.

During the lawsuit, the Daveses filed a second amended complaint against the four officers, the City, the two drivers who were understood to have caused the collisions, and unnamed Does. Although the record is somewhat unclear, the parties appear to agree that, subsequent to the filing of the second amended complaint, the case was pared down such that: Schroeder was no longer a defendant; the only cause of action remaining against the other three officers was Daves's negligence cause of action; and the only cause of action remaining against the City was her vicarious liability cause of action.

**2. The Summary Adjudication Motion**

Approximately two years into the lawsuit, the four officers and the City filed a motion for summary adjudication targeting the two remaining causes of action alleged against them—negligence and vicarious liability.

3

### a. *He Said / She Said, Between Borrego and Daves, Regarding Whether the Location Where Daves Was Struck and Injured Was a Location to Which Borrego Had Directed Her*

In the separate statement of undisputed material facts that they filed in support of their motion for summary adjudication, the four officers and the City claimed it was undisputed that the location where Daves had parked was a location of her own choosing, and that Borrego had not directed her to park there:

> Undisputed Fact No. 13: "Upon arriving at the scene, [Daves] parked her car *without . . . Borrego instructing her where to park.*" (Italics added.)

> Undisputed Fact No. 16: *"Without prompting or instruction by . . . Borrego,* [Daves] drove her [car] to a position along the east curb of Cathedral Canyon Drive approximately ten feet behind Officers Lara's and Vela's marked patrol SUV." (Italics added.)

But, in her response to the motion, Daves presented evidence that—if believed—would contradict these purportedly undisputed facts. That evidence came in the form of passages from Daves's deposition testimony in which she repeatedly and specifically testified that the location where she had parked her car (and where she had been struck and injured) was a location to which Borrego had *directed* her to proceed and park.

### b. *The Trial Court's Ruling on the Motion*

Following oral argument, the trial court issued a ruling on the motion. The court denied the motion as to Schroeder because it said Schroeder had been dismissed from the case before the motion was heard, thus "making the [m]otion moot as to him;" however, it granted the motion as to Borrego, Vela, Lara, and the City.

4

### i.   The Trial Court's Duty Analysis

In the portions of its ruling focusing on the negligence cause of action and the question of whether any of the officers owed Daves a duty of care, the trial court acknowledged and quoted case law addressing circumstances in which a "special relationship" creating such a duty is deemed to arise between a police officer and an individual with whom the officer interacts.  As the trial court correctly stated:

> " 'Under some circumstances, a defendant may have an affirmative duty to protect the plaintiff from harm at the hands of a third party, even though the risk of harm is not of the defendant's own making.' " ([*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204], at p. 215.)  "In that circumstance, the defendant's 'affirmative duty' may arise where they have a 'special relationship' with . . . the plaintiff.  (*Ibid.*)  'A special relationship between the defendant and the victim is one that 'gives the victim a right to expect' protection from the defendant.  (*Id.* at p. 216.) [¶ . . . ¶]
>
> "In the case of *police officers,* the special relationship may arise where an officer 'create[d] the peril in which plaintiff found herself' or where they took an 'affirmative action which contributed to, increased or changed the risk which would have otherwise existed.' "  (*Williams* [*v. State of California* (1983) 34 Cal.3d 18] at pp. 27–28.)"  (Italics added.)

Then, to illustrate this concept, the trial court quoted *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 717 (*Lugtu*), as follows:  " '[A] police officer who exercises his or her authority to direct another person to proceed to—or stop at—a particular location, owes such a person a duty to use reasonable care in giving that direction, so as not to place the person in danger or to expose the person to an unreasonable risk of harm.' "  Then the trial court ruled:  that "[t]he evidence is that Daves . . . was not told to park [where she parked], and . . . that she moved freely into that area absent

5

direction . . . from any of the Officer Defendants," that Borrego and the City "ha[d] met their burden to demonstrate that Borrego owed no duty to Daves," and that "Daves ha[d] not met *her* burden to show the existence of a triable issue of fact."

### ii. The Trial Court's Immunity and Vicarious Liability Analyses

In the portions of its ruling focusing on Borrego and the City's immunity defenses and Daves's cause of action against the City for vicarious liability, the trial court ruled that (1) "even if the Court could find a duty, it [nonetheless] would find that Borrego was immune from liability under the Government Code for exercising his discretion in suggesting generally where Daves should park in the course of investigating the initial accident at the intersection," and (2) "[b]ecause the Officer Defendants are not individually liable for their acts, the City of Cathedral City cannot be held vicariously liable."

### 3. The Judgment and a Further Paring Down of the Parties

On the basis of its summary adjudication ruling, the trial court entered judgment in favor of Borrego, Vela, Lara, and the City, and against Daves. Daves timely appealed the judgment—but then withdrew the appeal as to Vela and Lara, leaving Borrego and the City as the sole remaining defendants who are parties to this appeal.

## II.

## DISCUSSION

Borrego and the City (hereafter defendants) argue that they cannot be liable to Daves, directly or vicariously, for each of two reasons. First, they say Borrego had no duty to prevent harm to Daves. Second, they say the immunity that Government Code sections 820.2 and 815.2, subdivision (b), confer upon public employees and public entities for discretionary acts shields

6

them from liability.  We address each of these arguments in turn, after first stating the standard of review.

## A.    *The Standard of Review*

" 'On appeal after a motion for summary [adjudication] has been granted, we review the record de novo.' " (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1472.)  "In performing our de novo review, we view the evidence in the light most favorable to plaintiff as the losing party." (*Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 64 (*Johnson*).) Thus, "we liberally construe plaintiff's evidentiary submissions and strictly scrutinize [the] defendant[s'] . . . evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiff's favor." (*Ibid.*)  In evaluating the evidence and arguments, we make " 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law' " (*Smith,* at p. 1474); and we uphold the summary adjudication of a cause of action if:  (1) any of the cause of action's elements cannot be established, or (2) an affirmative defense to it *can* be established.  (See Code Civ. Proc., § 437c, subd. (*o*).)

## B.    *The Duty Issue*

The defendants contend that Daves cannot establish the essential element of a duty of care on which to premise her negligence and vicarious liability causes of action.  Daves responds by arguing that there arose, between herself and Borrego, a "special relationship" giving rise to such a duty.

In addressing these arguments, we begin by noting three fundamental principles:  First, "[u]nder general negligence principles, . . . a person ordinarily is obligated to exercise due care in his or her own actions so as not

7

to create an unreasonable risk of injury to others, and this legal duty generally is owed to the class of persons who it is reasonably foreseeable may be injured as the result of the actor's conduct." (*Lugtu, supra,* 26 Cal.4th at p. 716, citing Civ. Code, § 1714.) Second, "one's general duty to exercise due care includes the duty not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the reasonably foreseeable conduct (including the reasonably foreseeable *negligent* conduct) of a third person." (*Lugtu,* at 716, italics added, citing *Schwartz v. Helms Bakery Limited* (1967) 67 Cal.2d 232, 240–244.) And third, in the absence of a grant of immunity, public employees and public entities may be held liable for negligence. (*Lugtu,* at p. 715, citing Gov. Code, §§ 815.2 and 820.)

In examining the topic of liability of public employees for negligence, and the concept of a duty on which such liability can be predicated, our Supreme Court has noted that duty is a concept that "has confounded courts, law professors, [and] treatise writers." (See *Walker v. County of Los Angeles* (1987) 192 Cal.App.3d 1393, 1398 (*Walker*).)

"Drawing a boundary line around one's duty in the law of tort becomes even more complicated when we are inquiring into the liability of public employees . . . . Private citizens ordinarily do not owe an affirmative duty to save their fellow citizens from harm unless they personally created the risk. [Citation.] But in a very real sense the general public pays public employees specifically for the purpose of having them assume an affirmative duty to aid everyone in that general public. Thus, if ordinary standards applied they might be held responsible in tort for every injury suffered by every member of society every time a public employee negligently failed to do something which could have prevented harm. However, it is feared this concept of duty might

8

expose public employees and especially the public treasury to intolerable financial burdens." (*Walker, supra*, 192 Cal.App.3d at p. 1398; cf. *Hardy v. Vial* (1957) 48 Cal.2d 577, 583 [" 'There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative' "]; *Leon v. County of Riverside* (2023) 14 Cal.5th 910, 927–928).

To avoid such a result, California jurisprudence has developed over time the principle—acknowledged by the trial court—that a "special relationship" is required to have arisen between a public employee and a private citizen before that public employee may be held to have owed the private a citizen a duty:

> "California . . . require[es] a 'special relationship' between the public employee and a specific private citizen before a duty is created. A 'special relationship' exists if and only if an injured person demonstrates the public officer 'assumed a duty toward [him] greater than the duty owed to another member of the public.' " (*Walker, supra,* 192 Cal.App.3d at p. 1398.)

In this case, Daves argues a "special relationship," requiring recognition of a duty of care on the part of Borrego, arose from any one or a combination of three circumstances that she contends are present in this case: (1) Borrego requested that the blood draw occur at "a dark roadway in the middle of the night," rather than "at a safe location such as the jail, Cathedral City Police Station or hospital"; (2) Borrego "explicitly directed [Daves] to park her vehicle in an unsafe location next to where the blood draw was to occur," thereby "exposing [her] to the danger of approaching vehicles" and "significantly increas[ing] the risk of a secondary crash," when he instead "could have and should have directed her to park out of the way of

oncoming traffic in the safety of the adjacent 7-11 parking lot"; and (3) Borrego "failed" to "put down cones or flares to warn oncoming traffic of [Daves's] parked vehicle."

For reasons we discuss *post,* we conclude that Supreme Court precedent makes clear that circumstance number two—if proven at trial— would suffice by itself to establish a special relationship and corresponding duty. Indeed, as our Supreme Court stated in *Lugtu*: "Consistent with the basic tort principle recognizing that the general duty of due care includes a duty not to expose others to an unreasonable risk of injury at the hands of third parties, . . . California cases uniformly hold that *a police officer who exercises his or her authority to direct another person to proceed to—or to stop at—a particular location, owes such a person a duty to use reasonable care in giving that direction, so as not to place the person in danger or to expose the person to an unreasonable risk of harm."* (*Lugtu, supra,* 26 Cal.4th at p. 717, italics added.)

The trial court acknowledged the passage we have italicized. But it did not attempt to distinguish *Lugtu*, nor did it acknowledge the existence of a genuine issue of material fact as to whether Borrego had or had not directed Daves to park in the location where she ended up being injured. And it is that genuine issue of material fact (an issue that cannot be resolved on summary adjudication) that compels us to conclude that the defendants have not established, as a matter of law, that Borrego owed no duty of care to Daves.

In an effort to distinguish *Lugtu,* the defendants argue that no special relationship was established, and thus no duty of care was triggered because "[h]ere, in contrast to *Lugtu*, [Daves] was not a private party being stopped for traffic enforcement purposes," but instead "admits . . . she was an

10

independent contractor on scene to conduct a contracted service." In making this argument, they imply that the duty that our Supreme Court has held should be recognized when an officer tells a detained motorist where to position her car or herself should not be recognized when that officer tells a contractor, who has been called to the scene to assist him in performing his duties, where to position her car or herself. We perceive no rational basis on which to conclude that "the basic tort principle recognizing that the general duty of due care includes a duty not to expose others to an unreasonable risk of injury at the hands of third parties" (see *Lugtu, supra,* 26 Cal.4th at p. 717) should not apply with the same force to the contractor who is told where to park, as it does to the other classes of motorists who are told where to park.

The defendants also argue that *Minch v. Department of California Highway Patrol* (2006) 140 Cal.App.4th 895 furnishes a more apt comparison to the facts in the present case because *Minch* and this case each pertain to a situation in which a "vendor" (the vendor in *Minch* was a tow truck driver) whose employer had dispatched them to the scene of an accident was struck by a vehicle in a *second* collision, sustained injuries, and sued law enforcement personnel who had been present at the scene. (See *Minch*, at pp. 899–900.) The court of appeal in *Minch* concluded that the "undisputed evidence demonstrate[d] the CHP officers did not have a duty of care toward plaintiff because they did not create or increase the risk of harm that led to plaintiff's injuries, and [that] the circumstances did not establish a special relationship between the officers and plaintiff such that the officers would have had a duty to protect him." (*Id.* at p. 898.) But, in focusing on the holding in *Minch*, the defendants overlook facts in that case that distinguish it from the case at hand. Perhaps chief among such overlooked facts is that, in *Minch*, unlike the present case, it was undisputed that "[t]he officers did

11

not direct [the tow truck driver] . . . where to park." (*Minch, supra,* 140 Cal.App.4th at pp. 899, 906.) In addition, the tow truck driver was not struck and injured until after the services for which he had been called to the scene had been performed. (*Id.* at pp. 899, 906.)

In like fashion, the defendants argue that Daves's presence in front of her car at the moment of impact was voluntary ("[a]ppellant . . . solely chose to prepare her blood draw materials on the hood of her car while standing in the roadway,") as if to liken her presence in that location at that moment to the presence of the tow truck driver in *Minch*, who had lingered at the scene after having completed the services that he had been dispatched there to perform. But this ignores the evidence that Borrego had *directed* Daves to park her car in that location—a location that it probably would be reasonable for Daves to presume would be safe for her car and safe for her because Borrego had directed her there.

The defendants further argue that Borrego had no special relationship with Daves, and thus owed her no duty of care, because "[t]here is no evidence or authority suggesting that Borrego had the ability to control the conduct of other drivers at the intersection" and "no evidence . . . that the [second] accident . . . was reasonably foreseeable to Borrego." But this argument misapprehends the nature of the nexus between the concept of foreseeability and the existence of a duty. "[A] court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard v. Uribe* (1986) 41

Cal.3d 564, 572, fn. 6.) In performing such general evaluations, courts routinely conclude that:

> "In the generalized sense of foreseeability pertinent to the duty question, that a vehicle parked by the side of a freeway may be struck by another vehicle leaving the freeway, resulting in injury to either vehicle's occupants, is *clearly foreseeable.* Drivers are supposed to control their vehicles and keep them on the traveled roadway, but common experience shows they do not always do so. Freeway drivers may be intoxicated, distracted, blinded by the weather or sun, sleepy or sick, and for any of these reasons or others may drive off the roadway. Mechanical problems with their vehicles can also force motorists to suddenly leave the freeway. If they do so at freeway speeds and collide with another vehicle parked alongside the road, they are likely to be injured or injure other occupants of the vehicles, or both. This general foreseeability is reflected in the Official Reports [i.e., case law], in that numerous decisions have involved collisions between vehicles leaving a highway and vehicles or other obstacles on the roadside."

(See *Cabral v. Ralphs Grocery Company* (2011) 51 Cal.4th 764, 775 (italics added); see also *ibid.,* fn. 4 [citing opinions]; *Jackson v. Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1840 ["the danger of an intoxicated or otherwise out-of-control driver veering off course on a highway in darkness and crashing into whatever lay in her path" is "reasonably foreseeable"]; *Bigbee v. Pacific Telephone & Telegraph Company* (1983) 34 Cal.3d 49, 58 ["Swift traffic on a major thoroughfare late at night is to be expected. Regrettably, so too are intoxicated drivers. [Citation.] Moreover, it is not uncommon for speeding and/or intoxicated drivers to lose control of their cars and crash into . . . whatever . . . may be standing alongside the road they travel."].)

The defendants argue that "[t]here is no evidence or authority suggesting that [Borrego] acted to increase potential risks to [Daves]" and

13

they point out that, to the contrary, Daves "expressly admits that neither Borrego . . . nor any other officer . . . told her that he would protect her." But howsoever true this may be, it disregards the fact that a police officer telling a motorist to park her car in a particular location generally carries with it an implication that the officer either deems that location to be safe (or at least less vulnerable to foreseeable harms than other nearby locations) or has undertaken to make it so.

The defendants further argue that Borrego owed Daves no duty of care because Daves was merely "directed generally where her patient was and where the blood would be drawn" and that whatever Borrego said to her "cannot be understood as a command requiring [her] to park, as she did," in the location where she ended up being struck and injured. But this characterization of Borrego's interaction with Daves is contradicted by the evidence (discussed *ante*) that Daves has presented to the contrary. (See *Johnson, supra,* 43 Cal.4th at p. 64 ["we view the evidence in the light most favorable to plaintiff as the losing party"].)

In a similar vein, the defendants point out that Daves "admits that it would have been possible for her to have parked instead at the parking lot of the nearby 7-Eleven and to have used the crosswalks that are at that intersection of Dinah Shore and Cathedral Canyon to walk over to the spot where the blood draw was going to be conducted." This acknowledgment by Daves, the defendants argue, is tantamount to an "admi[ssion] that no one, including Borrego, told her that she had to park where she did." But, again, these arguments overlook the fact that Daves has presented evidence supporting an inference that a uniformed officer at the scene of a traffic collision and a suspected crime had directed her to park in the location where she parked. So, too, does it ignore the fact that it would have been unlawful

14

for her to disobey a directive from the officer. (See Vehicle Code section 2800, subdivision (a) ["It is unlawful to willfully fail or refuse to comply with a lawful order . . . or direction of a peace officer . . . when that peace officer is in uniform and is performing duties pursuant to any of the provisions of this code."].)

The defendants also argue that "[t]here is no . . . evidence that [Daves] *herself* specifically was requested to attend [the accident scene]" (italics added). Presumably they mean that Daves was not specifically requested *by Borrego*. But, irrespective of their meaning, this detail is of no import. It does not change the fact that Borrego called for a blood draw. It does not change the fact that an individual with the skills to perform a blood draw was sent at Borrego's request. And it does not change the fact (if Daves's, and not Borrego's, testimony is to be believed) that Borrego told Daves she was to park in a specific location or the fact that Daves complied by parking in that location (and ended up being struck and injured there).

Lastly, the defendants emphasize that "Borrego *disputes* that he directed [Daves] where to park her vehicle. He maintained that he merely thanked her for coming and explained that he planned to have her draw [the suspect]'s blood on the grassy area of the southeast corner of the intersection" (italics added). But of course the defendants' outright acknowledgment that Borrego disputes a fact that is plainly material to each of the remaining causes of action serves only to reinforce why it is that—at this stage in the proceedings—we cannot conclude that Daves will be unable to establish the existence of a special relationship and a duty. Thus we must conclude that

15

the trial court erred in concluding that Daves could not establish a special relationship and duty of care.[1]

Having concluded that the alleged conduct of Borrego may have created a special relationship and a duty to Daves, we ordinarily would be required to " 'consider whether the policy considerations set out in *Rowland* [*v. Christian* (1968) 69 Cal.2d 108 (*Rowland*)] warrant a departure from that duty in the relevant category of cases.' "[2]  (See *Doe v. Lawndale Elementary School Dist.,* (2021) 72 Cal.App.5th 113, 129, italics omitted.)  In this case, our contemplation of those considerations (the *Rowland* factors) arguably is rendered unnecessary by the fact that the Supreme Court presumably was mindful of those factors when it acknowledged and reaffirmed, in *Lugtu,* the

---

[1]  Our conclusion that the defendants have not succeeded in *refuting* the existence of a duty does not mean that Daves has succeeded in *establishing* one.  Indeed, as held in *Laabs v. Southern California Edison Company* (2009) 175 Cal.App.4th 1260, we do not here hold that any one or more defendants did or did not owe Daves a duty of care as a matter of law; "rather, we hold [only] that triable issues of fact exist as to the relevant considerations underlying duty in this case, and that [the defendants] failed to establish that [they were] entitled to judgment as a matter of law."  (*Id.* at p. 1269.)

[2]  The policy considerations set out in *Rowland* were "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach and the availability, cost, and prevalence of insurance for the risk involved."  (*Rowland, supra*, 69 Cal.2d, at p. 113.) " 'When public agencies are involved,' " these typically are supplemented by such further considerations as: " ' "the extent of [the agency's] powers, the role imposed upon it by law and the limitations imposed upon it by budget." ' " (*Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 881.)

"uniform[ ] hold[ing]" of California cases that "a police officer who exercises his or her authority to direct another person to proceed to—or to stop at—a particular location, owes such a person a duty to use reasonable care in giving that direction, so as not to place the person in danger or to expose the person to an unreasonable risk of harm." (*Lugtu, supra,* 26 Cal.4th at p. 717.) But *Lugtu* notwithstanding, we have duly considered the *Rowland* factors and have concluded that—as applied to the category of cases in which a police officer has directed another person to proceed to, or stop at, a particular location—those factors do not warrant any departure from the duty the Supreme Court upheld in *Lugtu*.

## C.    *The Government Immunity Issue*

The second basis for the trial court's ruling on the defendants' motion is the immunity that Government Code sections 820.2 and 815.2, subdivision (b), confer upon public employees and public entities exercising the discretion with which they have been vested.[3]

---

[3]    Government Code section 820.2 states in its entirety that: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Government Code section 815.2, states in its entirety that: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

All references to code sections in our discussion of government immunity are to the Government Code.

17

Each of these two provisions of the Government Claims Act was squarely addressed by our Supreme Court in *McCorkle v. City of Los Angeles* (1969) 70 Cal.2d 252 (*McCorkle*), a case with facts similar to the facts present here. In that case, the plaintiff—McCorkle—was involved in a night-time automobile collision at an intersection. (*Id.* at pp. 255, 258–259.) Lombardo, "an officer of the Los Angeles Police Department . . . arrived at the scene and commenced to investigate the collision." (*Id.* at p. 255; see also *id.*, at p. 259.) During the investigation, Lombardo and McCorkle walked into the street to examine skid marks. (*Id.* at p. 259.) While they were there for that purpose, a car entered the intersection and struck McCorkle, severely injuring him. (*Id.* at p. 260.). McCorkle sued Lombardo and the City of Los Angeles for negligence (*id.* at p. 255); and Lombardo and the city argued that they were shielded from liability by section 820.2 (which grants immunity from liability to a public employee "exercis[ing] . . . the 'discretion vested in him' ") and by section 815.2, subdivision (b) (which extends the immunity of a public employee to the public entity that employs him). (*McCorkle,* at p. 260; Gov. Code §§ 820.2 and 815.2, subd. (b)).

In addressing the government immunity arguments, the court in *McCorkle* focused on the fact that the immunity set forth in section 820.2 is limited to conduct that is "discretionary" rather than "ministerial;" and it observed that merely "classif[ying] . . . the act of a public employee as 'discretionary' will not produce immunity under section 820.2 if the injury to another results, not from the employee's exercise of 'discretion vested in him' to undertake the act, but from his negligence in performing it after having made the discretionary decision to do so." (*McCorkle, supra,* 70 Cal.2d at pp. 260–261.) Then, applying that observation to the facts with which it had been presented, the court distinguished between: (1) on the one hand, an

18

officer's decision to undertake an investigation, which the court characterized as discretionary; and (2) on the other hand, the officer's conduct of the investigation, which the court implicitly characterized as ministerial. (*Id.* at p. 262.)

The court in *McCorkle* observed that Lombardo would have been "clothe[d] . . . with immunity" if McCorkle's injury had resulted from Lombardo's exercise of discretion in *undertaking* his investigation of the accident, but not if it had resulted from Lombardo's negligence in *conducting* the investigation. (*McCorkle, supra,* 70 Cal.2d at pp. 261-262.) Then the court held that McCorkle's injury had not resulted from Lombardo's exercise of discretion, but instead had "resulted from [Lombardo's] negligence *after*

the discretion, if any, had been exercised"[4] and that, "[b]ecause the essential requirement of section 820.2—a causal connection between the exercise of discretion and the injury—did not exist, the statutory immunity does not apply." (*McCorkle,* at p. 262, italics added.)  Having thus dispensed with Lombardo's immunity defense, the court then proceeded to turn to the city's immunity defense and held that:  "Since Lombardo was not immune from liability under section 820.2, the City . . . is not immune under subdivision (b) of section 815.2." (*McCorkle,* at p. 262, italics added.)

Defendants' efforts to differentiate *McCorkle* are not persuasive.  They argue that "*McCorkle* is distinguishable from the instant matter in that [Daves] cannot establish the general negligence of Borrego."  But any

_____

[4]      The rationale for drawing a distinction between undertaking an investigation (a discretionary decision, protected by immunity) and conducting an investigation (a ministerial function, that is not protected by immunity) is illuminated in a passage, in *Elton v. County of Orange* (1970) 3 Cal.App.3d 1053, in which the court explained that:  "If the words 'the exercise of the discretion' were to be given a broad, literal interpretation, section 820.2 could be invoked to establish immunity from liability for every act and omission of public employees, for, 'it would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance.' " (*Elton,* at p. 1057.)  It is for this reason that "[s]ections 815.2 and 820.2 confer immunity [only] upon 'basic policy decisions' or conduct characterized as within the 'planning' rather than the 'operational' level of decision-making." (*H & M Associates v. City of El Centro* (1980) 109 Cal.App.3d 399, 406-407; see also *Elton,* at p. 1058 [functions "which could be classified as involving basic policy decisions (such as recommending a child be, or not be, declared a dependent child) . . . warrant immunity," whereas "[d]ecisions made with respect to the maintenance, care or supervision of . . . a dependent child . . . do not]; cf. *Johnson v. State of California* (1968) 69 Cal.2d 782, 795–797 [distinguishing between "determination of whether to place a youth on parole" (discretionary) and "determination as to whether to warn . . . foster parents [with whom paroled youth is placed] of latent dangers facing them" (ministerial); citing additional cases].)

20

conclusion as to whether or not Daves will be able to carry the burden of establishing negligence is premature.

*McCorkle* is no outlier. Over the course of many years, its rationale has guided the Supreme Court and courts of appeal in other cases involving claims of negligence on the part of police officers conducting investigations. (See, e.g., *Clemente v. State of California* (1980) 101 Cal.App.3d 374, 379, disapproved on other grounds in *Williams v. State of California* (1983) 34 Cal.3d 18 ["What is involved under these allegations is not the discretion of [the Officer] in deciding whether to investigate the traffic accident, pursuant to the discretionary authority vested in him by [the] Vehicle Code . . . [citation], but instead only his negligence in his conduct of the discretionary investigation. [T]he discretionary immunity of Government Code section 820.2 . . . [does not] immunize[] the officer and the state from the legal consequences of this negligence."]; *Lugtu v. California Highway Patrol* (2000) 79 Cal.App.4th 359, 381, review granted and superseded by *Lugtu*, *supra,* 26 Cal. App.4th 703 [police officer's "decision to stop [car] for a traffic violation and to direct the driver to stop in the median area was an operational or ministerial decision, rather than a discretionary decision protected by immunity"].) On the basis of *McCorkle* and its progeny, we conclude the trial court erred in concluding that sections 820.2 and 815.2, subdivision (b), furnished a basis on which to summarily adjudicate the negligence and vicarious liability causes of action against Daves.

## III.

## DISPOSITION

The judgment is reversed and remanded for further proceedings consistent with this opinion.  Appellant is awarded costs on appeal.

KELETY, J.

WE CONCUR:


O'ROURKE, Acting P. J.


CASTILLO, J.